## United States District Court
## Eastern District of Michigan
## Southern Division

---

LEDA REED, as the Personal
Representative of the Estate of
Anthony Demone Clark-Reed

      Plaintiff,           CASE No. 4:18-cv-10427-LVP-EAS
                           Hon.  Linda V. Parker
                           Magistrate Judge Elizabeth A. Stafford

v.

THE CITY OF DETROIT,
OFFICER TRACY MORENO,
OFFICER ROBIN CARVER,
OFFICER ERIC CARTHAN,
Detroit Police Officers, in their
official capacities and individually,
jointly and severally.
             Defendants.

CRYSTAL B. OLMSTEAD (P69202)    HERBERT A. SANDERS (P43031)
City of Detroit Legal Department      Attorney for Plaintiff
Attorney for Defendants              615 Griswold St, Ste. 913
2 Woodward Ave., 5th Floor         Detroit MI 48226
Coleman A. Young Municipal Ctr.    (313) 962-0099
Detroit, MI 48226                 haslawpc@gmail.com
(313) 237-5035
olmsteadc@detroitmi.gov


Shawndrica N. Simmons (P70608)
77 Bagley Street
Pontiac, MI 48341
(248) 732-0168
Fax:  (248) 268-0168
legalservices@shawndricasimmons.com

**<u>DEFENDANTS CITY OF DETROIT, TRACY MORENO, ROBIN CARVER
AND ERIC CARTHAN'S
BRIEF IN SUPPORT OF MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

ISSUES PRESENTED ...................................................................... ii

TABLE OF AUTHORITIES ............................................................ iii

STATEMENT OF FACTS ..................................................................1

LEGAL ARGUMENT ........................................................................5

   A.   The Plaintiff cannot establish a cause of action for unlawful arrest under the 4th Amendment because the officers had probable cause for the traffic stop. ....................................................................................................5

   B.   The Plaintiff cannot maintain a 4th Amendment claim of excessive force against Officer Moreno or the other Officer Defendants because the officers are entitled to qualified immunity...................................................8

   C.   Plaintiff cannot maintain a substantive due process claim under the 14th amendment "ordered liberty" clause because the allegations are more properly brought under the 4th Amendment...............................................16

   D.   Plaintiff has failed to plead any facts to establish a plausible claim under 42 U.S.C. § 1983 against the City of Detroit...................................................18

   E.   Plaintiff cannot maintain a claim based on the due process clause of the Michigan constitution because remedies exist under federal and state law. ...........................................................................................................19

PRAYER FOR RELIEF ........................................................................21

## ISSUES PRESENTED

**A. Whether Defendants Tracy Moreno, Robin Carver, and Eric Carthan are entitled to summary judgment because the plaintiff has failed to establish a claim of false arrest under the 4th Amendment.**

Defendant City of Detroit answers, "Yes."
Plaintiff answers, "No."

**B. Whether Defendants Tracy Moreno, Robin Carver, and Eric Carthan are entitled to summary judgment because the plaintiff has failed to establish a claim of deliberate indifference and excessive force under the 4th Amendment.**

Defendant City of Detroit answers, "Yes."
Plaintiff answers, "No."

**C. Whether Defendants Tracy Moreno, Robin Carver, and Eric Carthan are entitled to summary judgment since the plaintiff has failed to establish a claim under the Due Process Clause of the 14th Amendment.**

Defendant City of Detroit answers, "Yes."
Plaintiff answers, "No."

**D. Whether Defendant City of Detroit is entitled to Summary Judgment because the Plaintiff has failed to show any evidence in support of a claim for municipal liability under 42 U.S. 1983.**

Defendant City of Detroit answers, "Yes."
Plaintiff answers, "No."

**E. Whether Defendants Tracy Moreno, Robin Carver, and Eric Carthan are entitled to summary judgment since the plaintiff has failed to establish a claim under the Due Process Clause of the Michigan Constitution.**

Defendant City of Detroit answers, "Yes."
Plaintiff answers, "No."

ii

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Albright v. Oliver,*
  510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) ........................................18

*al–Kidd, supra,* at 742, 131 S.Ct. 2074....................................................................14

*Barker v. Goodrich,*
  649 F.3d 428 (6th Cir.2011) ....................................................................................10

*Binay v Bettendorf,*
  601 F3d 640 (6th Cir. 2010) ....................................................................................10

*Carroll v. United States,*
  267 U.S. 132 (1925) ..................................................................................................6

*Delaware v. Prouse, 440 U.S. 648 (1979)* ..............................................................5

*Estate of Brackens v Louisville Jefferson Co Metro Govt,*
  680 Fed Appx 362 (CA 6, 2017)...........................................................................15

*Graham v. Connor,*
  490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ...............................9, 18

*Heien v North Carolina*
  135 S Ct 530; 190 L Ed 2d 475 (US, 2014) ..........................................................8

*Johnson v. Glick,*
  481 F.2d 1028 (2d Cir. 1973) ................................................................................16

*Jones v Powell,*
  462 Mich 329; 612 NW2d 423 (2000). .................................................................21

*Liberty Lobby,*
  477 U.S. 424 (1986) ..................................................................................................5

*Lyons v City of Xenia,*
  417 F3d 565 (6th Cir. 2005) ..................................................................................12

*Marvin v City of Taylor*................................................................................................12

*Monell v. Dept. of Social Services of the City of New York,*
  436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) .................................... 19, 20

*Moran v. Al Basit LLC,*
  788 F.3d 201 (6th Cir. 2015) ....................................................................4

*Mullenix v Luna,*
  136 S Ct 305; 193 L Ed 2d 255 (2015). ...............................................14

*Pembaur v. City of Cincinnati,*
  475 U.S. 469,106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) .........................21

*Powers v. Hamilton County Pub. Defender Comm'n,*
  501 F.3d 592 (6th Cir. 2007) ..................................................................20

*Rich v City of Mayfield Hts* 955 F2d 1092 (6th Cir. 1992).......................14

*Scott v. Harris,*
  550 U.S. 372 ............................................................................................4

*Tingle v. Arbors at Hilliard,* 692 F.3d 523 (6th Cir. 2012) ........................5

*United States v. Davis,*
  430 F.3d 345 (6th Cir.2005) ....................................................................5

*United States v. Jackson,*
  682 F.3d 448 (6th Cir. 2012 ....................................................................5

*Wegener v. Covington,*
  933 F.2d 390 (6th Cir.1991) ..................................................................13

*Whren v. United States,*
  517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ..........................7

*Williams v. AT&T Mobility*
  *Servs. LLC,* 847 F.3d 384 (6th Cir. 2017) .............................................5

## **STATUTES**

MCL 257.709 .................................................................................................6

## **RULES**

42 U.S.C. § 1983. ........................................................................................20

iv

Fed. R. Civ. P. 56(a)..................................................................................................4

## STATEMENT OF FACTS

Plaintiff brings a five count complaint against the City of Detroit, Officer Tracy Moreno, Officer Robin Carver and Officer Eric Carthan in their individual and professional capacities. The complaint stems from a traffic stop that occurred on March 31, 2015 at approximately 9:00 p.m. There are three sources of factual evidence from the traffic stop: the three officer's reports, the deposition testimony of Officers Eric Carthan and Officer Tracy Moreno, and the surveillance video from a nearby business.

The officers were on patrol in the area of Vernor Avenue and Mullane Street.  Officer Moreno was the driver.  Officer Carver was the front passenger and Officer Carthan was the rear passenger. They were driving a partially marked scout car.  The decedent, Anthony Demone Clark-Reed was driving a burgundy colored Dodge Charger.  Mr. Clark-Reed was traveling westbound on Vernor.  The officers were traveling eastbound on Vernor.

The officers noticed that Mr. Clark-Reed's windows were illegally tinted. Officer Moreno activated the scout car's overhead flashing lights and sirens for Mr. Clark-Reed's vehicle to pull over.  The police reports indicate that Mr. Clark-Reed failed to pull over until several blocks later.

 Officer Moreno's report states that "the driver began to reach to his right near the passenger side area. The driver made several lunging motions to his right

1

while driving for almost 6 blocks with lights and sirens at a speed of about 30 MPH before finally pulling over between Lawndale and Cabot." **(Exhibit A: Officer Moreno Report).** His report also states that he approached the vehicle slowly and gave Mr. Clark-Reed loud orders to roll down all of the windows and shut the vehicle off. Mr. Clark-Reed complied with both orders. Officer Moreno also indicates that he gave verbal orders to Mr. Clark-Reed to interlock his fingers and place them on top of his head. Mr. Clark-Reed complied, but twice removed his right hand. Officer Moreno then opened the vehicle door and placed his hands on Mr. Clark-Reed and ordered him to exit the vehicle and lay on the ground. Officer Moreno then placed him into handcuffs while standing over Mr. Clark-Reed.

While Officer Moreno was placing Mr. Clark-Reed into handcuffs he indicated to Officer Moreno that he needed his inhaler. Officer Moreno and Officer Carthan helped him to his feet, walked him to his car and then walked him to the squad car. Again, Mr. Clark-Reed requested the inhaler. Officer Carver retrieved the inhaler from Mr. Clark-Reed's vehicle. Officer Moreno administered the inhaler, but it proved ineffective. Mr. Clark-Reed stated that he was going to urinate on himself and stated the word, "ambulance."

Officer Carver radioed for EMS and Mr. Clark-Reed urinated on himself and slid down the car onto the ground. The officers moved him onto his side and

immediately removed the handcuffs. Officer Carver retrieved the CPR mask and he and Officer Moreno began to administer CPR.  Officer Moreno performed the chest compressions and Officer Carver gave Mr. Clark-Reed breath.  Mr. Clark-Reed was not responsive to the CPR measures.  The officers were still performing CPR at the time of EMS arrival.  EMS took over CPR and transported Mr. Clark-Reed to Detroit Receiving Hospital. Staff was unable to revive him and   Dr. Brian Kern pronounced him dead. Officers Carthan and Carver's reports state essentially the same factual details as Officer Moreno's.  **(Exhibit B: Officer Carthan and Carver's Reports).**

Portions of the stop are visible on the surveillance tape and provide indisputable evidence of certain events.   First, the video clears up one point of dispute-it proves that the front driver's side and passenger windows were tinted. Mr. Clark-Reed comes to a complete stop at 9:33:00 into the video.  The windows are all rolled up. The court can clearly see that all the windows were tinted with the exception of the windshield that appears transparent.

 Officer Moreno arrives at Mr. Clark-Reed's driver side door at 9:33:22. Nine seconds later, he opens the door at 9:33:31. Seven seconds later Officer Moreno leans into the car at 9:33:38.  Sixteen seconds later at 9:33:54 Mr. Clark-Reed emerges from the vehicle. Although the footage is grainy, upon careful inspection, it appears that at 9:34:35 officers roll Mr. Clark-Reed over onto his

3

back after handcuffing him.   Five seconds later at 9:34:40 Mr. Clark-Reed is visibly standing. Three seconds later at 9:34:43, Mr. Clark-Reed is visibly leaning against the vehicle.   Eight seconds later the officers walk Mr. Clark-Reed to the squad car.   **(Exhibit C: Surveillance Video of Stop).**   The Wayne County Medical Examiner's office listed the cause of death as severe asthma contributed to by obesity. **(Exhibit D: Wayne County Medical Examiner Report).**

## Standard of Review

Summary judgment is appropriate when there exists no dispute of material fact and the moving party demonstrates entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the court considers all evidence, and all reasonable inferences flowing therefrom, in the light most favorable to the nonmoving party. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). If there is videotape of the events, the court should view the facts in the light depicted by the videotape. *Scott v. Harris*, 550 U.S. 372, 378-81.

A genuine issue of material fact can only exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 424, 248 (1986); *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017). A "mere 'scintilla' of evidence" supporting the nonmoving party's position will not defeat a properly supported motion for

summary judgment. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012)

(quoting *Liberty Lobby*, 477 U.S. at 251).

## **LEGAL ARGUMENT**

A. **The Plaintiff cannot establish a cause of action for unlawful arrest under the 4th Amendment because the officers had probable cause for the traffic stop**.

> Traffic stops constitute a "seizure" within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Police officers, however, may lawfully stop a vehicle whenever they have *probable cause* to believe that a traffic violation has occurred. United States v. Jackson, 682 F.3d 448, 453 (6th Cir. 2012). An officer has probable cause when the facts and circumstances within the officer's knowledge, based on "reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been or is being committed." United States v. Davis, 430 F.3d 345, 352 (6th Cir.2005) (citing Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)) (emphasis added).

Plaintiff's complaint seems to indicate that there was no stated basis for the

stop.  Paragraph 28 of Plaintiff's complaint alleges that, "the stop, detention and

arrest detention of Mr. Clark-Reed was without probable cause." Paragraphs 16-18

allege that the officers made a U-Turn and began to follow Mr. Clark-Reed's

vehicle.  The officers initiated lights and sirens and required Mr. Reed to pull over.

The officers then ordered Mr. Reed to roll down the windows and to place his

hands on his head to which he complied.

However, the documentary evidence as well as the officers' deposition testimony indicate that the reason for the stop was that the Mr. Clark-Reed was driving a vehicle that had illegally tinted windows.   Officer's Carthan and Moreno both testified that the drivers and passengers side windows can only be tinted four inches from the top of the window.   Relevant portions of MCL 257.709 states as follows:

> Sec. 709. (1) A person *shall not operate* a motor vehicle with any of the following:
>
> (a) A sign, poster, nontransparent material, *window application,* reflective film, or nonreflective film upon or in the front windshield, *the side windows immediately adjacent to the driver or front passenger,* or the sidewings adjacent to and forward of the driver or front passenger, *except* that a tinted *film may be used along the top edge of the windshield and the side windows or sidewings immediately adjacent to the driver or front passenger if the material does not extend more than 4 inches from the top* of the windshield, or lower than the shade band, whichever is closer to the top of the windshield.

Hence, the observation of illegally tinted windows creates a valid reason for the stop.   "It is well established that a police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime. U.S. v Jackson, 682 F.3d 448, 453 (6th Cir.2012); *see also United States v. Street,* 614 F.3d 228, 232 (6th Cir.2010) ("[T]here is nothing unreasonable about stopping a vehicle whose driver has just committed a traffic violation.") (citing *Whren v. United States,* 517 U.S. 806, 810,

116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). The fact that a traffic violation is not an arrestable offense does not divest the police of authority to stop the vehicle. *Street,* 614 F.3d at 232 (upholding the legality of a traffic stop made for a seatbelt violation). *United States v Jackson*, 682 F3d 448, 453 (6th Cir. 2012).

However, Plaintiff has an erroneous view of the legality of the window tint on the vehicle that Mr. Clark-Reed was driving.  The City deposed the Plaintiff and when questioned about the legality of the window tint she opined as follows:

**Exhibit E: Leda Reed Deposition, (Page 23:4 to 23:10)**

```
 4   Q.   Okay.  So hearing the illegal tint did you form the
 5        idea that that tint was illegal on your own or did
 6        someone tell you no, that's not illegal?
 7   A.   Well, that's no easy way to answer it.  Everyone in
 8        the neighborhood is constantly pulled over for
 9        illegal tint so they make it a purpose not to have
10         anything too dark so they don't get pulled over.
```

However, even if the officers were mistaken about the law, they would still be entitled to summary judgment.  The United States Supreme Court addressed the issue of whether an officer is entitled to qualified immunity where a traffic stop was based on the officer's mistaken understanding of the law.  In *Heien v North Carolina,* 135 S Ct 530, 532; 190 L Ed 2d 475 (US, 2014), Sergeant Matt Darisse began following a suspicious vehicle.  He initiated a traffic stop because one of the vehicle's brake lights was not working. Nicolas Heien was the driver.  Sergeant

Darisse became suspicious of his behavior and asked for permission to search the vehicle. Mr. Heien consented and Sergeant Darisse found cocaine in the vehicle. Heien was charged with attempted narcotics trafficking.  Heien filed a motion to suppress the evidence. He argued that he did not violate the statute and that the reason was for the stop lacked probable cause. Specifically, he argued that the statute only required one working stop lamp.  The Trial Court denied the motion and the Court of Appeals reversed. The North Carolina Supreme Court reversed the Court of Appeals holding that even if there was no actual violation, the mistake was reasonable and the stop was valid.   The United States Supreme Court held that the Fourth Amendment excused an officer's reasonable mistaken believe in the law. Heien, at 536. Essentially, the Court held that the Fourth Amendment turned on reasonableness. Id at 540.   The officer's probable cause for the stop was not invalidated if it is premised on mistakes of fact or mistakes of law so long as those mistakes are reasonable.  *Heien* creates a substantial barrier for Plaintiffs seeking to invalidate stops and the Defendants are entitled to summary judgment.

B. **The Plaintiff cannot maintain a 4th Amendment claim of excessive force against Officer Moreno or the other Officer Defendants because the officers are entitled to qualified immunity**.

Plaintiff's claim that the officer defendants used excessive force in the course of the arrest is analyzed under the Fourth Amendment using the objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 397, 109

S.Ct. 1865, 104 L.Ed.2d 443 (1989). However, the officer defendants are immune from suit because qualified immunity "shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Barker v. Goodrich,* 649 F.3d 428, 433 (6th Cir.2011). When deciding whether qualified immunity bars the claim, a two-step analysis is performed. *Binay v Bettendorf,* 601 F3d 640, 646 (6th Cir. 2010). First, the evidence must show that the officer's conduct violated a constitutional right. *Id.* If a right was violated, the next inquiry is whether the right was clearly established. *Id.*

Thus, the first step is to identify exactly what actions Officer Moreno and the other officers took and then to determine if those actions violated Mr. Clark-Reed's constitutional right to be free of excessive force.

In this case, Plaintiff's complaint Paragraphs 19-22 and 46 allege as follows:

19.    Defendant Moreno then forcefully pulled Mr. Clark-Reed out of the vehicle, slamming him onto the ground.
20. While on the ground, Moreno straddled Mr. Clark-Reed and handcuffed him.
21. As a result of being forced to the ground, while on the ground, Mr. Clark-Reed began to struggle to breath.
22. Eventually, the Defendant Officers lifted Mr. Clark-Reed up, and walked him while handcuffed to their car.

46. Police Officers actions of snatching Plaintiff Decedent out of his vehicle, slamming him onto the pavement, sitting on the Plaintiff Decedent, handcuffing him, then compelling him to return to his feet, and walk to the squad car, constituted excessive force.

The first problem in the analysis is that there is absolutely no evidence to support the version of the events as stated in the Complaint.  Specifically, the City deposed the Plaintiff and she testified that she was not present at the scene of the incident; she further indicated that she had canvased the area and had not been able to find any witnesses. **(Exhibit E: Leda Reed Deposition: p. 7, 52-53).** So as stated in the Statement of Facts, the only factual evidence in this case comes from: (1) the officers' reports, (2) the officers' depositions and (3) the surveillance video.

None of these documents support Plaintiff's version of the story.  Officer Moreno's report indicates that as he approached the vehicle, he ordered Mr. Clark-Reed to interlock his fingers and place them on his head.  Mr. Clark-Reed removed his right hand several times.    As a result, upon reaching the vehicle, Officer Moreno placed his hands over Mr. Clark-Reed's hands, and ordered him to slowly exit the vehicle and lay on the ground. **(Exhibit A: Moreno's Report).** Officer Moreno's deposition testimony is also consistent with his report.  **(Exhibit F: Officer Moreno Deposition p. 31-33)**

10

The video further shows how innocuous Officer Moreno's actions were. As stated in the Statement of facts, the entire incident from the exit from the car to Mr. Clark-Reed being placed into handcuffs and rolled over onto his side consisted was less than a minute.  Further, there is nothing in the video that appears excessive.

The case law also indicates that the officers' actions were reasonable.  It is reasonable to use force against an individual who refuses to obey an officer's commands.  For example, in *Marvin v City of Taylor* 509 F3d at 238., the plaintiff, a 78 year old man, alleged that the officers used an unreasonable amount of force when they "grabbed [his] arm, kicked [his] leg, knocked [him] down in the back of the police car, knocked [his] glasses off, [his] hat, snapped [his] arm behind [his] back, and slapped the cuffs on [him]."  509 F3d at 238.  The court decided that because the plaintiff had admitted that he refused to put his arms behind his back, the police were justified in forcing him to a submissive posture so they could handcuff him.  *Id.* at 246.

Similarly, in *Lyons v City of Xenia*, 417 F3d 565, 570 (6th Cir. 2005) the plaintiff was tackled by a 240 pound police officer as she stood arguing with another officer. The plaintiff asserted that this constituted excessive force.  The court dismissed the claim concluding that the officer's actions to "quickly and aggressively… end the confrontation" were reasonable because there was "an apparent threat of safety to an officer."  *Id.* at 578.

Mr. Clark-Reed's failure to comply with Officer Moreno's order to place his hands on his head, amounted to a failure to comply similar to the Plaintiff's actions at issue in the *Marvin* and *Lyons* cases.  In *Marvin,* the action precipitating the use of force was the plaintiff's failure to obey police commands.  In *Lyons*, it was the plaintiff arguing with another officer.  In the instant case, Plaintiff's failure to pull over, his reaching actions observed by Moreno, and his failure to keep his hands on his head create a safety concern for Officer Moreno.

Hence, Officer Moreno's actions of ordering Mr. Clark-Reed from the vehicle, placing his hands on him, ordering him to lay on the ground on his stomach and *maybe* briefly sitting his lower back while handcuffing him do not constitute an *unreasonable* use of force.    Further, it must be kept in mind that, "The ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity. *Wegener v. Covington,* 933 F.2d 390, 392 (6th Cir.1991). Defendants bear the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority during the incident in question. *Id.* Thereafter, the burden shifts to the plaintiff to establish that the defendants' *conduct violated a right so clearly established* that any official in defendants' positions would have clearly understood that they were under an affirmative duty to refrain from such conduct. *Id. Rich v City of Mayfield Hts*, 955 F2d 1092, 1095 (6th Cir. 1992). A determination of "clearly established

requires an examination of the state of the law at the time of Mr. Clark-Reed's stop on March 31, 2015.

The Supreme Court has reiterated the high level of *specificity* needed to establish a clearly established law. "We have repeatedly told courts ... not to define clearly established law at a high level of generality." *al–Kidd, supra,* at 742, 131 S.Ct. 2074. The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Ibid.* (emphasis added). This inquiry " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'. . . Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." 533 U.S., at 205, 121 S.Ct. 2151. *Mullenix v Luna*, 136 S Ct 305, 308; 193 L Ed 2d 255 (2015).

"W]e have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment.... While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate.... Of course, there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.... But

a body of relevant case law is usually necessary to clearly establish the answer....” *Wesby,* 583 U.S., at ——, 138 S.Ct., at 581 (internal quotation marks omitted).*City of Escondido, Cal v Emmons*, 139 S Ct 500, 504 (2019).

The 6th Circuit reviewed The *Estate of Brackens v Louisville Jefferson Co Metro Govt*, 680 Fed Appx 362, 367 (CA 6, 2017) two years after Mr. Clark-Reed’s stop. And even two years later, it shows that the law was not clearly established to indicate that Officer Moreno’s actions would have been unreasonable.   In *Brackens* the police *forcibly* removed a middle aged man that suffered from a host of debilitating conditions following a high speed chase.   Leon Brackens was the passenger in a vehicle driven by Rhonda Sullivan.   Mr. Brackens asked Ms. Sullivan for a ride to the store. The officers noticed Ms. Brackens vehicle leaving a high crime area and ran her vehicle plates. She had outstanding warrants and the police initiated a traffic stop. The officers ordered her to exit the vehicle, she fled the scene.   Ms. Sullivan led the police on a high speed chase for twenty minutes. The officers called for backup and surrounded the vehicle.   The officers, with *guns drawn*, ordered her from the vehicle and she *immediately exited* the vehicle and dropped to the ground.   The officers then approached the passenger side and *again with guns drawn*, ordered Mr. Brackens from the vehicle. Mr. Brackens *failed to immediately exit* the vehicle.   Two officers then forcibly removed Mr. Brackens by unbuckling his seatbelt and *dragging* him from the

14

vehicle. The officers rolled him onto his stomach on the concrete. Further, at least one officer *used his knee to apply force* onto Mr. Brakens *head* while handcuffing him.  The officers then stood him up and leaned him against the car.

At that point he was unable to stand.  Mr. Brakens suffered a broken femur during the takedown.  The 6th Circuit ultimately held the forcible removal was reasonable.  The court held that the police were confronted with a suspect that could be dangerous, and that most importantly, he did not "immediately" comply.

The 6th Circuit opined as follows:

> The force used must be objectively reasonable under the circumstances, and Brackens suffered serious injuries during the incident. Yet " '[n]ot every push or shove ... ' violates the Fourth Amendment." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Here, the officers used only reasonable force in neutralizing the *perceived threat* of a *potentially dangerous passenger* by removing him from the vehicle, pinning him to the ground until he was handcuffed, and conducting a pat down. There is no *indication that the force applied would have seriously harmed a person without Brackens's conditions*, of which the officers had *no reason to know*.

Unlike Bracken's, first, the officers did not have the car surrounded with guns drawn. Second, Officer Moreno did not *drag* Mr. Clark-Reed from the vehicle. Third, unlike Mr. Brakens who was a middle-age man, Mr. Clark-Reed was a six foot tall large young man. Fourth, there was no indication that Bracken's was "reaching to the passenger compartment" prior to the stop.  Further, just like the officers had no knowledge of Bracken's health conditions,  the officers in the

instant case also had no indication the Mr. Clark-Reed was suffering from an asthma attack until after he was on the ground.

The case law establishes that there is no case law *clearly establishing* that Officer Moreno's actions were unreasonable. In fact,   the precedent provides that Officer Moreno's actions were reasonable.  Therefore, there was no violation of Mr. Clark-Reed's clearly established rights and Defendant Moreno is entitled to qualified immunity on the excessive force claim.   [1] The other named Defendants are also entitled to qualified immunity as Plaintiff has alleged no facts that would establish an excessive use of force against Officers Carver and Carthan.

C. **Plaintiff cannot maintain a substantive due process claim under the 14th amendment "ordered liberty" clause because the allegations are more properly brought under the 4th Amendment**.

> As the Supreme Court has stated, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.' " *Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).*Estate of Dietrich v Burrows*, 167 F3d 1007, 1013 (6th Cir. 1999)

Plaintiff's complaint alleges as follows:

---

[1] Plaintiff's Complaint Paragraph 51 alleges," The Defendants owed Plaintiff Decedent a duty to be treated equally and without regard to race or color; however. Defendants breached this duty." Plaintiff has provided no evidence in support of this allegation; thus Defendants are entitled to summary Judgment on this claim as well.

56. The Fourteenth Amendment to the U.S. Constitution encompasses a substantive component that prohibits officials' actions that deprive rights that are implicit in the concept of "ordered liberty."

57. The false arrest, detention, manufacturing of evidence, as well as providing false testimony against a Defendant in order to justify an arrest "shocks the conscience" and upsets the balance of "ordered liberty."

58. Defendants, through their own actions and/or policies and supervision, or lack thereof, violated clearly established law and no reasonable police officer would believe these actions were lawful.

There are no factual allegations to support Count III that differ from the factual allegations stated throughout Plaintiff's Complaint. Count III simply appears to be an attempt to bring the same False Arrest and Excessive Force claims against the officer Defendants in a different form. "Ordinarily, a charge that law enforcement personnel used excessive force to effect a plaintiff's arrest, which caused bodily injury to that individual, is assessed under Fourth Amendment "objective reasonableness" standards. *Claybrook v Birchwell*, 199 F3d 350, 359 (CA 6, 2000). Further, paragraph 58 alleges Mr. Clark-Reed suffered as a result of, "policies and supervision, or lack thereof violations." Again, this language indicates a claim against the City that should be analyzed under the 4th Amendment standard set forth in <u>Monell v. Dept. of Social Services of the City of New York,</u> 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The law is well established that the 4th Amendment is the proper mechanism to redress these claims. Finally,

to the extent that Count III claims "fabrication of evidence and testimony," plaintiff has not offered any evidence in support of this claim and again, such a claim should be brought under the 4th Amendment.  As such, Defendants are entitled to Summary Judgment on the substantive due process claim.

### D. Plaintiff has failed to plead any facts to establish a plausible claim under 42 U.S.C. § 1983 against the City of Detroit.

The United States Supreme Court has made clear that § 1983 "plainly imposes liability on a government that, under color of some official policy, causes an employee to violate another's constitutional rights." *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  In order to determine whether a government or municipality is liable for a § 1983 violation, a two-part test is applied.  First, a plaintiff must show that he suffered a constitutional violation at the hands of a municipal official.  If an underlying constitutional violation exists, a municipality is liable for that violation if the plaintiff can show that "the municipality engaged in a 'policy or custom' that was the 'moving force' behind the deprivation of the plaintiff's rights." Powers v. Hamilton County Pub. Defender Comm'n, 501 F.3d 592, 607 (6th Cir. 2007) (citing *Monell,* 436 U.S. at 694). However, a government cannot be held liable for a § 1983 violation under a theory of *respondeat superior. See* Monell, 436 U.S. at 691.

Rather, municipal liability only attaches under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury ..." *Monell*, 436 U.S. at 694.  Thus, a municipality can only be held responsible for the decisions of municipal officers who possess "final authority to establish municipal policy ... [because such decisions] surely [represent] an act of official government 'policy' as that term is commonly understood." Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), citing *Monell* at 694. Plaintiff has not produced a single shred of evidence in the process of discovery that would sustain a *Monell* claim. As such, the City is entitled to summary judgment.

### E. Plaintiff cannot maintain a claim based on the due process clause of the Michigan constitution because remedies exist under federal and state law.

The Michigan Supreme Court ruled that a Plaintiff had no right to bring a claim for violation of the Michigan constitution against an individual or municipal defendant because other remedies were available in *Jones v Powell*, 462 Mich 329, 337; 612 NW2d 423, 427 (2000).  Much of the Court's opinion was based on a review of its prior decision in *Smith v Dept of Pub Health*, 428 Mich 540, 544; 410 NW2d 749, 750 (1987).

We agree with the Court of Appeals majority that our decision in *Smith* provides no support for inferring a damage remedy for a violation of the

19

Michigan Constitution in an action against a municipality or an individual government employee. In *Smith,* our consideration of the issue focused on whether such a remedy should be inferred against the state, which is not subject to liability under 42 U.S.C. § 1983. ...*Smith* only recognized a narrow remedy against the state on the basis of the unavailability of any other remedy. Those concerns *are inapplicable* in actions against a *municipality or an individual defendant*. Unlike states and state officials sued in an official capacity, municipalities are not protected by the Eleventh Amendment. *Lake Country Estates, supra* at 400–401, 99 S.Ct. 1171. A *plaintiff may sue a municipality in federal or state court under* 42 U.S.C. § 1983 to redress a *violation of a federal constitutional right*.

In *Jones,* City of Detroit police officers were pursuing a suspect in an alleged assault and car theft. The suspect fled and the officers believed that he ran into the Plaintiff's home. Plaintiff was inside with her minor daughter. Plaintiff and her minor daughter were in the back of the house and came to the door upon hearing the commotion at the door. According to Plaintiff, the officers demanded that she open the security door and she complied. The officers then pointed guns at her and left once they realized that the suspect was not in the home. Plaintiff brought several claims against the City and the officers including false imprisonment, and violations of her federal constitutional rights. The matter went to trial and the jury found no cause on all claims except for the Michigan Constitutional claims. The Court of Appeals reversed finding that Plaintiff could not bring a cause of action against the officers under the Michigan constitution when federal and state remedies were available.

20

In the instant case, the Plaintiff is raising a claim under Michigan constitution when there are federal and state claims available. Hence, the Defendants are entitled to Summary Judgment.

## PRAYER FOR RELIEF

WHEREFORE, Defendants City of Detroit, Tracy Moreno, Eric Carthan and Robin Carver respectfully request that this Honorable Court dismiss all claims against them, together with costs and any other relief deemed just and appropriate under the circumstances.

Dated: February 28, 2019

Respectfully submitted,

/s/ Crystal B. Olmstead
CRYSTAL B. OLMSTEAD (P69202)
City of Detroit Legal Department
Attorney for Defendants

## PROOF OF SERVICE

I certify that on February 28, 2019, the foregoing paper(s) including exhibits, were served upon the above named counsel(s) of record through the ECF filing system. I declare that the foregoing is true to the best of my knowledge, information and belief.

/s/ Crystal B. Olmstead