## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| Leda Reed, as the Personal Representative of the Estate of Anthony Demone Clark-Reed, | Hon. Linda Parker Case No. 18-10427 Mag. Elizabeth Stafford |

       Plaintiff,

  -vs-

THE CITY OF DETROIT, a Michigan
Municipal Corporation, OFFICER
TRACY MORENO, OFFICER
ROBIN CARVER, OFFICER ERIC CARTHAN,
in their Official capacities and individually,
Jointly & Severally,

       Defendants.

_____/

| | |
|---|---|
| **Herbert A. Sanders (P43031)** **The Sanders Law Firm, P.C.** Attorney for Plaintiff The Ford Building 615 Griswold St., Ste. 913 Detroit, MI 48226 (313) 962-0099 (o) haslawpc@gmail.com | **Crystal B. Olmstead (P69202)** **City of Detroit Law Department** Attorney for Defendants 2 Woodward Avenue, Suite 500 Detroit, MI 48226 (313) 237-5051 (o) (313) 224-5505 (f) olmstedc@detroitmi.gov |

**Shawndrica N. Simmons (P70608)**
Attorney for Plaintiff
77 Bagley St.
Pontiac MI 48341
(248) 732-7559 (0)
(248) 268-0168 (f)
legalservices@shawndricasimmons.com

_____/

## PLAINTIFF'S RESPONSE
## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

## TABLE OF CONTENTS

I.    ISSUE ……………………………………………………………4

      TABLE OF AUTHORITIES ……...………………………………………..4

II.   FACTS ….…………………………………………………………7

III.  STANDARD OF REVIEW ……………………………………………15

IV.   RELEVANT STATUTE ……...…………………………………………16

V.    ARGUMENT ……………………………………………………17

         A. DEFENDANTS DID NOT HAVE PROBABLE CAUSE FOR THE
            SEARCH, SEIZURE AND ARREST OF THE PLAINTIFF-
            DECEDENT. …………………………………………………..17

                1.    The Stop of Plaintiff-Decedent's Vehicle for Tinted
                      Windows, was a Pretext to Search for a More Serious
                      Violation. …………………………………………………18

                2.    There is Virtually No Distinction in Appearance Between
                      Illegal Tinting Applied by Material, Application, or Film, and
                      the Legal Tinting Achieved through a Coloration of the
                      Windows, Thus the Defendant Officers Could Not Have
                      determined that Plaintiff-Decedent's Windows were in
                      Violation of *M.C.L. § 257.709*. …………………………22

         B. THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED
            IMMUNITY FOR THE EXCESSIVE FORCE UTILIZED DURING
            THE ARREST, SEARCH AND SEIZURE OF THE PLAINTIFF-
            DECEDENT. …………………………………………………24

         C. THE CITY OF DETROIT ACQUIESCED IN THE
            UNCONSTITUTIONAL DEPRIVATION OF PLAINTIFF-
            DECEDENTS' CIVIL RIGHTS. …………………………………33

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

D. PLAINTIFF ALLEGES A VIABLE CLAIM UNDER THE
MICHIGAN CONSTITUTION. …………………………………33

VI.   CONCLUSION …………………………………………...……………34

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

## I.     ISSUE

Whether the Defendants violated the civil and Constitutional rights of Plaintiff -

Decedent as a result his search, seizure, and arrest?

Plaintiff answers:              Yes.

Defendants answer:            No.

## TABLE OF AUTHORITIES

### CASES

*Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)) ……………………………...16

*United States v. Freeman, 209 F.3d 464, 466 (6th Cir. 2000)* ………………17,19

*Katz v. United States, 389 U.S. 347 (1947)* ……………………………………..17

*United States v. Haynes, 301 F.3d 669, 677 (6th Cir. 2002)* …………………..17

*Gaddis v. Redford Twp., 364 F.3d 763, 771 (6th Cir. 2004)* ……………………17

*Whren v. United States, 517 U.S. 806, 810 (1996)* ………………………………17

*People v Powell*, 2003 Mich. App. LEXIS 2417, (Unpublished Court of Appeals Docket No. 239288 Decided September 23, 2003) ……………………………..18

*People v Lee*, 2001 Mich. App. LEXIS 1559, (Unpublished Court of Appeals Docket No.220788 Decided March 9, 2001) ……………………………………..18

*People v Hinton*, 1998 Mich. App. LEXIS 2233, (Unpublished Court of Appeals Docket No. 197100 Decided February 10, 1998) ………………………………18

*People v. Phillips*, 2009 Mich. App. LEXIS 2294 (Unpublished Court of Appeals Docket No. 280631 Decided Nov. 3, 2009) ……………………………………..18

*United States v. Bailey, 302 F.3d 652, 657-658 (6th Cir. 2002)* ……………19,25

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

*Knowles v. Iowa, 525 U.S. at 118, 119 S.Ct. 484 (1998) (citing Terry, 392 U.S. 1, 88 S.Ct. 1868)* ……………………………………………………………….19

*Joshua v. DeWitt, 341 F.3d 430, 443 (6th Cir.2003)*……………………………..19

*Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. (1968)*………..……………………19,20,27

*U.S. v. Lyons, 687 F.3d at 763(2012) (quoting Dorsey v. Barber, 517 F.3d 389, 395 (6th Cir.2008))*………………………………………………………………..20

*United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)* ……………………………………………………………………………….20

*Ybarra v. Illinois, 444 U.S. 85, 94, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)*………20

*United States v. Wilson,* 506 F.3d 488, 492 (6th Cir.2007)   …………………20,27

*Climer v. Dillenbeck, Case No. 08-11074. (E.D. Mich. Feb. 3, 2009)*……..20,21,22

*U.S. v. Fordham, Criminal Case No. 05-50009. (E.D. Mich. Nov. 2, 2005)*……5,24

*Delaware v. Prouse, 440 U.S. 648 (1979)* ………………………………………24

*Tennessee v. Garner, 471 U.S. 1, 7 (1985)* ……………………………………25

*Graham v. Connor*, 490 U.S. 386, 397 (1989) ………………………………..25,26

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) ……………………………………25

*Summerland v. Cty. of Livingston,* 240 F. App'x 70, 76 (6th Cir. 2007) (quoting *Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir. 2005)) ……………………………25

*Pearson v. Callahan, 555 U.S. at 229 (2009)*   ……………………………………...25

*Dickerson v. McClellan, 101 F.3d 1151, 1161–62 (6th Cir. 1996)* …………..26,32

*Bouggess v. Mattingly, 482 F.3d 886, 889 (6th Cir. 2007)*………………………26

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

*Rich v. City of Mayfield Heights, 955 F.2d 1092, 1097–98 (6th Cir. 1992)*……..27

*United States v. Richardson, 385 F.3d 625, 630 (6th Cir.2004)*…………………27

*United States v. Henry, 429 F.3d 603, 613 (6th Cir.2005)* ……………………..27

*United States v. Noble, 364 Fed. Appx. 961, 970–71 (6th Cir.2010)*……………27

*Getz v. Swoap, 833 F.3d 646 (6th Cir. 2016)*………………………………………..28

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987)   ……………………………..31

*Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006) …..…31

*Wells v. City of Dearborn Heights, 538 Fed. Appx. 631 (6th Cir.2013)*…………..31

*Champion v. Outlook Nashville, Inc., 380 F.3d 893, 901 (6th Cir.2004)* ………31

*Martin v City of Broadview Heights, 712 F.3d 951 (6th Cir. 2013)* ……………..32

*Simpson v. Hines, 903 F.2d 400, 401(5th Cir.1990)*   ……………………………32

*Sova v. City of Mt. Pleasant, 142 F.3d 898, 903 (6th Cir. 1998)*   ……………32,33

*Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v City of Memphis, 361 F.3d at 902 (citing City of Canton v. Harris, 489 U.S. 378, 379, 103 L.Ed. 2d, 412, 109 S. Ct. 1197 (1989))*………………………………………………33

*Smith v. Dept. of Public Health, 410 N.W.2d 749, 751(Mich. 1987), aff'd, Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989)* ……………………………34

*Bills v. Aseltine, 52 F.3d 596, 600-01 (6th Cir. 1995)*   …………………………34

*Pleasant v. Zamieski, 895 F.2d 272, 278 (6th Cir. 1990)*   ………………………34

*Stamps v. City of Taylor, 554 N.W.2d 603, 607 (Mich.Ct.App. 1996)*   ………….34

## <u>STATUTES</u>

MCL 257.709   ……………………………………………………………………16

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MCL 257.683 …………………………………………………………………….19

**RULES**

42 U.S.C. §1983 ……………………………………………………………15

Fed. R. Civ. P. 56(a)   ………………………………………………………15

49 C.F.R. § 571.205  ………………………………………………………..23

## II.    FACTS

1.  This is a civil rights action in which Plaintiff, seeks relief for Defendants'
    violations of Plaintiff-Decedent Anthony Demone Clark-Reed's civil rights.

2.  On March 30, 2015, at approximately 9:30 pm, Detroit Police Officer
    Defendants Moreno, Carver and Carthan observed a red 2006 Dodge driven by
    Plaintiff Decedent Anthony Demone Clark-Reed. See Exhibit 1, pgs. 6-7, & 11,
    Deposition of Carver, Vol I; Exhibit 2, Deposition of Carver Vol II, pg. 21.

3.  The Officers were part of the Special Operations Unit for the Fourth Precinct.
    See Exhibit 1, pg. 10; Exhibit 3, Deposition of Officer Moreno pg. 5.

4.  The purpose of the Special Operations Unit was to be "proactive" in looking for
    narcotics, gang activity, and weapon offenses.  See Exhibit 3, pg. 5.

5.  Officer Moreno testified that alleged traffic offenses are used as a pretext to
    accomplish the goals of the Special Operations Unit:   *"I guess, you could say,*
    *my primary function would be to do those weapon, narcotics, wanted person*
    *investigations, and yes, I can use traffic to do that"*.  See Exhibit 3, pgs. 6-8.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

6. At the time the Defendant Officers observed Mr. Clark-Reed, they were traveling eastbound on West Vernor Street in Detroit.

7. The Officers made a U-turn and began to follow Mr. Clark-Reed upon allegedly observing the vehicle to have front tinted windows. See Exhibit 1, pg. 13; Exhibit 3, pg. 12.

8. The Defendants did not immediately execute their lights and/or siren once they got behind Mr. Clark-Reed's vehicle. See Exhibit 3, pg. 14.

9. Thereafter, the Officers executed the lights on their vehicle, and eventually the siren, requiring Mr. Clark-Reed to pull his vehicle over. See Exhibit 3, pg. 15 & 17.

10. At all times, Mr. Clark-Reed was driving within the posted speed limit. See Exhibit 3, pg. 17.

11. Per Defendant Carthan, Mr. Clark-Reed pulled his vehicle over within approximately 2 blocks of the Defendants' activating the lights on their vehicle[1]. See Exhibit 1, pg. 14.

---

[1] There is clearly a question of fact as to the length of time it took for Mr. Clark-Reed to pull over his vehicle after the lights and/or siren were activated on the police vehicle. Remarkably, contrary to Defendant Carver's testimony, Defendant Moreno maintains that Mr. Clark-Reed drove for 6 blocks before pulling over his vehicle. See Exhibit 3, pg. 18. Moreover, it should be noted that before African-American men can pull their vehicle over when they are being pursued by the police, they must first retrieve their driver's license, registration, and proof of insurance; because reaching for these items after they have been pulled over can cost them their lives. See *6 Things Black Men Tell Their Sons About Traffic Stops* USA TODAY NETWORK Mary Bowerman, USA TODAY Network Published 1:36 p.m. ET July 7, 2016 | Updated 5:13 p.m. ET July 7, 2016; See also:

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

12. The Officers approached the vehicle giving Mr. Clark-Reed verbal commands to roll down the windows, turn off the car and place his hands behind his head, to which he complied.  See Exhibit 3, pg. 24.

13. Defendant Moreno pulled Mr. Clark-Reed out of the vehicle, and forced him onto the ground, while Mr. Clark-Reed maintained his hands behind his head.  See Exhibit 1, pg. 15.

14. Defendant Carthan estimated that Mr. Clark-Reed weighed between 300 and 400 pounds.  See Exhibit 2, pg. 8.

15. While on the ground, Defendant Moreno straddled Mr. Clark-Reed, sat upon him, and handcuffed him[2].  See Exhibit 1, pg. 16 – 17.

16. According to Defendant Moreno:

> *First he went to his knees and then onto his belly or his stomach or chest…I might have sat on the small of his back area right above the buttocks*.  **See Exhibit 3, pg. 32-33.**

17. Defendant Carthan testified that Mr. Clark-Reed was forced to get out of his vehicle, and taken to the ground because of his body movements within his vehicle, prior to stopping his vehicle.  See Exhibit 1, pg. 16.

---

https://www.nationalgeographic.com/magazine/2018/04/the-stop-race-police-traffic/

[2]See link to video from a nearby store that evidences the occurrence:
https://www.dropbox.com/s/y76ahl1gu1a5mb0/Reed%20v%20Detroit%20-%20Video%20A.wmv?dl=0

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

18. However, Defendant Carthan acknowledged that after the activation of the lights on their police vehicle, Mr. Clark-Reed was never observed to do anything illegal.  See Exhibit 2, pg. 27.

19. Mr. Clark-Reed at all times was very cooperative with the Defendants; at no time was Mr. Clark-Reed speeding, attempting to elude the officers, or attempting to resist arrest.  See Exhibit 1, pg. 14; Exhibit 3, pg. 18.

20. As a result of being forced to the ground, and sat upon, while on the ground, Mr. Clark-Reed began to struggle to breath before being handcuffed.  See Exhibit 1, pg. 22; Exhibit 2, pg. 2 & 24; Exhibit 3, pg. 34.  Defendant Carthan acknowledged that it was obvious that Mr. Clark-Reed was struggling to breathe.  See Exhibit 2, pg. 9.

21. Defendant Carthan testified that it is uncommon for a person to be required to exit their vehicle for a simple civil infraction.  See Exhibit 1, pg. 19.

22. Moreover, Defendant Moreno acknowledged that having tinted windows was a civil infraction, and not an arrestable offense.  See Exhibit 3, pg. 14.

23. Eventually, the Defendant Officers handcuffed Mr. Clark-Reed, lifted him up, and walked him while handcuffed to their car.

24. No weapons were found upon Mr. Clark-Reed or within his vehicle, yet he remained handcuffed.  See Exhibit 2.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

25. Defendant Carthan stated that Mr. Clark-Reed was kept in handcuffs after it was determined that he was unarmed and not a threat because he was "breathing effusively":

> *Q. ...you patted him down and found no weapons on him, what would be the basis for keeping a person who has been cooperative with you in handcuffs?*
>
> *A. He was hostile a little bit.  Not as far as hostile, **but he was breathing effusively.**  See Exhibit 1, pg. 20*

26. Thereafter, Mr. Clark-Reed continued to struggle with his breathing.  While gasping for air, Mr. Clark-Reed asked that the Officers provide him with his inhaler from within the vehicle.  See Exhibit 1, pg. 21.

27. Allegedly, the officers retrieved the inhaler and administered it to Mr. Clark-Reed while he remained handcuffed.  See Exhibit 2, pg. 4 & 32.  However, Defendant Carthan was not able to identify within the store video footage of the occurrence when one of the officers retrieved the inhaler for Mr. Clark-Reed's use:

> *Q. You cannot identify in the video Officer Carver or anyone else retrieving the inhaler for Mr. Reed?*
>
> *A. Correct. See Exhibit 2, pg. 34.*

28. In fact, Defendant Carthan suggested that Defendant Carver threw the inhaler: *"I really don't know.  He might have tossed it to him.  I don't know".*  See Exhibit 2, pg. 34.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

29. Thereafter, the inhaler was allegedly administered to Mr. Clark-Reed by Defendant Moreno, while Mr. Clark-Reed was handcuffed.  See Exhibit 3, pg. 40.

30. Specifically, Defendant Moreno stated in his report:

> *I showed the inhaler to the Driver and asked is this yours? To which he nodded his head yes.  I then asked him, you want this? To which he again nodded his head yes.  And I held up the inhaler and he placed his mouth around the inhaler as I activated it...*  See Exhibit 7.

31. According to Defendant Carthan, he was only allowed to take "one puff" from the inhaler.  See Exhibit 2, pg. 3.

32. Subsequently, Mr. Clark-Reed began to urinate on himself as he mumbled the word "ambulance".  See Exhibit 3, pg. 41.

33. Thereafter, Mr. Clark-Reed collapsed to the ground, and died while in the custody of the Defendant Officers as result of asphyxiation.  See Exhibit 3, pg. 42.

34. The inhaler was clearly administered improperly to Mr. Clark-Reed.[3]

    a. Mr. Clark-Reed should have been allowed to administer his own inhaler;

    b. There is no evidence that the Defendant Officers appropriately primed the inhaler prior to administering it to Mr. Clark-Reed;

---

[3]See American Academy of Allergy, Asthma & Immunology, instructional video on how to use an inhaler https://youtu.be/KAI8_WKRSiM ; Further see Utah Department of Health Asthma Program, instructional video on how to use an inhaler https://youtu.be/Rdb3p9RZoR4.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

c.  There is no evidence that the Defendant Officers checked the inhaler passage for blockage prior to administering it to Mr. Clark-Reed;

d.  The evidence establishes that Mr. Clark-Reed was only allowed one puff from the inhaler, which is contrary to most prescriptions;

e.  Further, it is essential that the person utilizing the inhaler be able to take *"calm deep breaths".*  Defendants deprived Mr. Clark-Reed of being able to take calm breaths by requiring him to remain handcuffed while utilizing the inhaler.

35. The report of Plaintiffs' Expert, Werner U. Spitz, M.D., FCAP states in part:

> *To apply the handcuffs behind Clark-Reed's back, the Officer Tracy Moreno states on page 33, lines 17/18 of his deposition that **he sat on the small of Clark-Reed's back**, right above his buttocks.  During this procedure, Cark-Reed complained to the officers that he suffered of asthma and could not breathe.  Reed was a large person weighing 376 lbs.  **Sitting on the small of Clark-Reed's back would compress the abdomen pushing the abdominal organs against the diaphragm. Such procedure would make it impossible for Clark-Reed to breathe**, as he stated to the officers.  The officers lifted the handcuffed Clark-Reed off the ground and walked him to their patrol car.  Clark-Reed continued to struggle with his breathing due to air hunger, which is what happens in an acute asthmatic attack... To relieve an acute asthmatic attack haphazard administration of the drug from an inhaler into the mouth does not work.  The drug needs to reach the smallest air tubes within each lung.  Otherwise the use of the inhaler remains ineffective, as it was in this case  When the patient administers the drug to himself, he is able to coordinate the depression of the inhaler with his breathing, only then does the drug reach the desired locations in the lungs... Stress and agitation are notorious for causing acute onset of asthmatic*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

*attacks in predisposed individuals.  Anthony Clark-Reed, 25 year old, African American male died as a result of asphyxiation due to inability to breathe brought on by asthma, triggered by stress, agitation and fear during his arrest.  But for ineffective use of an inhaler, Clark-Reed would not have died.*  See Exhibit 6.

36. Though the Officers maintained in their testimony that they were prompted to pull over Mr. Clark-Reed because of side tinted windows, no evidence was preserved showing the side windows.  The litany of   photos produced by the City of Detroit all show the vehicle with all of the windows rolled down.  See Exhibit 2, pg. 19 & 38; Exhibit 4.

37. Defendant Carthan acknowledges that the evidence of the alleged tinted windows should have been preserved, but it was not.  See Exhibit 2, pg. 41.

38. Remarkably, Defendants could not identify the degree of the window tint at the time Mr. Clark-Reed was pulled over for the alleged violation of driving with tinted front windows; nor were any of the Defendant officers equipped with a meter that could measure the tint of the windows.   See Exhibit 2, pg. 35; Exhibit 3, pg. 12-13.

39. The vehicle that Mr. Clark-Reed was driving at the time of the occurrence was owned by his girlfriend, Shaquandra Barbee.

40. Ms. Barbee testified that the tint on the windows was within the 35% visible light range as required by law.  See Exhibit 13.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

41. Though the Defendants' police vehicle was equipped with video recording equipment, the Defendants maintain that no recording from the police vehicle exist.  See Exhibit 1, pg. 8.

42. Though noting that there were discrepancies within the Defendant Officers' versions of the occurrence, the City of Detroit acquiesced in, and ratified the unconstitutional acts of the Defendant Officers.  See  Exhibit 5.

43. As a result of this occurrence, Plaintiff alleged (1) False Arrest, Violation of The Fourth Amendment to The U.S. Constitution Actionable Pursuant To 42 USC §1983; (2) Deliberate Indifference, Excessive Force, Violation of Due Process, in Violation of 42 U.S.C. § 1983, and the 4th Amendment to The U.S. Constitution; (3) Violation of Substantive Due Process, Violations of The Fourteenth Amendment to The U.S. Constitution, Actionable Pursuant to 42 USC §1983; (4) Municipal Liability for Constitutional Violations; and (5) Michigan Constitutional Claims.

### III.   STANDARD OF REVIEW

The Federal Rules of Civil Procedure require the Court to grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In evaluating a motion for summary judgment, the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party."  *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)).  The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## IV.   RELEVANT STATUTE

*MCL 257.709* states in part:

*(1) **A person shall not operate a motor vehicle with any of the following***:

*(a) A sign, poster, **nontransparent material, window application, reflective film, or nonreflective film upon or in the front windshield, the side windows immediately adjacent to the driver or front passenger, or the sidewings adjacent to and forward of the driver or front passenger**, except that a tinted film may be used along the top edge of the windshield and the side windows or sidewings immediately adjacent to the driver or front passenger if the material does not extend more than 4 inches from the top of the windshield, or lower than the shade band, whichever is closer to the top of the windshield.*

*(b) A rear window or side window to the rear of the driver composed of, covered by, or treated with a material that creates a total solar reflectance of 35% or more in the visible light range, including a silver or gold reflective film.*

\*\*\*

*(3) **This section does not apply to any of the following***:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

***

*(e) A special window treatment or application determined necessary by a physician or optometrist*, *for the protection of a person who is light sensitive or photosensitive, if the owner or operator of a motor vehicle has in possession a letter signed by a physician or optometrist, indicating that the special window treatment or application is a medical necessity. However, the special window treatment or application shall not interfere with or obstruct the driver's clear vision of the highway or an intersecting highway.*

## V.  ARGUMENT

### A. DEFENDANTS DID NOT HAVE PROBABLE CAUSE FOR THE SEARCH, SEIZURE AND ARREST OF THE PLAINTIFF-DECEDENT.

The Fourth Amendment prohibits unreasonable searches or seizures. A traffic stop is a seizure under the Fourth Amendment. *United States v. Freeman, 209 F.3d 464, 466 (6th Cir. 2000)*. If a search is conducted without a warrant, as it was here, it is considered *per se* unreasonable, unless it fits into one of the established exceptions. *See Katz v. United States, 389 U.S. 347 (1947)*. The Government has the burden of proving the applicability of a Fourth Amendment warrant exception to the search or seizure in question. *See United States v. Haynes, 301 F.3d 669, 677 (6th Cir. 2002)*. For a warrantless traffic stop based on a violation of a civil traffic infraction to be reasonable, the police officer must have probable cause to believe that a violation has occurred. *Gaddis v. Redford Twp., 364 F.3d 763, 771 (6th Cir. 2004); Wren v. United States, 517 U.S. 806, 810 (1996)*.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**1. The Stop of Plaintiff-Decedent's Vehicle for Tinted Windows, was a Pretext to Search for a More Serious Violation.**

Several unpublished Michigan Court of Appeals decisions reveal that <u>police use the tinted windows statute as an excuse to engage in fishing expeditions</u> for more serious crimes. *People v Powell*, 2003 Mich. App. LEXIS 2417, (Unpublished Court of Appeals Docket No. 239288 Decided September 23, 2003) [Police attempted to stop vehicle for failure to wear a seatbelt and tinted windows, and a search of the vehicle later revealed cocaine.]; *People v Lee*, 2001 Mich. App. LEXIS 1559, (Unpublished Court of Appeals Docket No.220788 Decided March 9, 2001) [Police stopped vehicle for tinted windows and found marijuana and a firearm.]; *People v Hinton*, 1998 Mich. App. LEXIS 2233, (Unpublished Court of Appeals Docket No. 197100 Decided February 10, 1998) [Stop for tinted windows and loud exhaust, although motivated by racial animus, did not require dismissal.]; and, *People v. Phillips*, 2009 Mich. App. LEXIS 2294 (Unpublished Court of Appeals Docket No. 280631 Decided Nov. 3, 2009) [Out-of-state vehicle stopped by Michigan State Police trooper for air fresheners hanging from the rear view mirror, even though clearly exempt under window tint statute, produced 906 Ecstasy pills.].

Clearly, the above cases illustrate that the tinted windows statute is being employed to engage in pretext stops. *MCL 257.683* states that an officer must have

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

reasonable grounds to stop a car for an equipment violation.  As that statute states

in relevant part; *"A police officer on reasonable grounds shown may stop a motor*

*vehicle and inspect the motor vehicle, and if a defect in equipment is found, the*

*officer may issue the driver a citation..." 257.683(2).*

Additionally, an officer may detain the vehicle or its occupants only so far as

consistent with the basis for the stop, "unless something that occurred during the

traffic stop generated the necessary reasonable suspicion to justify a further

detention." See *United States v. Bailey, 302 F.3d 652, 657-658 (6th Cir. 2002)*

*(citations omitted).* See also *United States v. Freeman, 209 F.3d 464, 466 (6th Cir.*

*2000).*  Moreover, an officer may "perform a 'patdown' of a driver [only] upon

reasonable suspicion that they may be armed and dangerous." See *Knowles, 525*

*U.S. at 118, 119 S.Ct. 484 (citing Terry, 392 U.S. 1, 88 S.Ct. 1868).* "Reasonable

suspicion is based on the totality of the circumstances," *Joshua v. DeWitt, 341 F.3d*

*430, 443 (6th Cir.2003) (citation omitted)*, and it exists if "a reasonably prudent

[person] in the circumstances would be warranted in the belief that his [or her]

safety or that of others was in danger," *Terry, 392 U.S. at 27, 88 S.Ct. 1868*. This

standard is an objective one. *Id.* at 22, 88 S.Ct. 1868 ("If subjective good faith

alone were the test, the protections of the Fourth Amendment would evaporate, and

the people would be secure in their persons, houses, papers, and effects, only in the

discretion of the police." (internal quotation marks omitted)).  Moreover,

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

"[r]easonable suspicion 'requires more than a mere hunch....' " *Lyons, 687 F.3d at 763 (quoting Dorsey v. Barber, 517 F.3d 389, 395 (6th Cir.2008))*. It demands "a particularized and objective basis for suspecting [that] *the particular person* " is armed and dangerous. *United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (emphasis added); see also Ybarra v. Illinois, 444 U.S. 85, 94, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)* ("The 'narrow scope' of the *Terry* exception [to the Fourth Amendment's warrant requirement] does not permit a frisk for weapons on less than reasonable belief or suspicion directed *at the person* to be frisked...." (emphasis added)); *United States v. Wilson,* 506 F.3d 488, 492 (6th Cir.2007).

In *Climer v. Dillenbeck, Case No. 08-11074. (E.D. Mich. Feb. 3, 2009)* Plaintiffs Climer and DeWulf sued defendant, Warren police officers Dillenbeck and Salisbury making claims under state and federal law stemming from a traffic stop. All of plaintiffs' claims were based on the allegation that defendants lacked probable cause for the initial traffic stop. As the plaintiffs left a party store, they headed north on Van Dyke and crossed Eight Mile, entering into Warren. At this point, they passed a squad car stopped at a stop light at the intersection of Eight Mile and Van Dyke with defendant officers inside. Defendants were located on Eight Mile facing westbound. The defendants said that as the minivan crossed the intersection at Eight Mile and Van Dyke, they believed the windows were tinted in

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

excess of the legal limit. Dillenbeck said that he could not see inside the minivan as it crossed the intersection in front of the squad car. Salisbury said that he noticed the front passenger window was tinted. Defendants said that Climer continued driving on Rivard for nearly a block before stopping. Climer, however, says that he did not notice the squad car until he had turned onto Rivard and that he drove for approximately 1/2 block before stopping because he did not realize the defendants were pulling him over; rather, he thought they were going to pass him. Dillenbeck instructed Salisbury to approach on the passenger side. At some point, he informed Salisbury that safety was a concern because of DeWulf's gesture of allegedly stuffing something into his pants prior to the vehicle coming to a stop. Salisbury removed Dewulf from the minivan and conducted a weapons pat down search. The pat down revealed that DeWulf had a small baggie of marijuana stuffed in his pants. Salisbury arrested DeWulf for possession of marijuana and placed him in the back of the squad car. Plaintiffs were charged with possession of marijuana. Dillenbeck and Salisbury maintain that the only reason for the traffic stop was the tinted windows. No citation was issued for tinted windows. The Defendants filed a Motion for Summary Judgment claiming qualified immunity. The Court held:

> *Thus, because defendants seek to justify stopping plaintiffs based on the grounds that the minivan's windows were illegally tinted, <u>defendants must have had probable cause at the time of the stop to believe that the windows were not in compliance with the statute.</u> Here, defendants testified that the only basis for the stop*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

> *was the allegedly illegal tinted windows which they observed when the minivan passed them on the road. Plaintiffs say that this basis is flawed because (1) plaintiffs were driving legally and not violating any laws, (2) defendants never inspected the windows after the stop to determine if they were tinted. The Court is constrained to find that there is a genuine issue of material fact as to whether probable cause existed to stop the minivan based on illegally tinted windows. First, it was 11:30 pm at night which sheds some doubt on the defendants' ability to see whether the windows were tinted illegally, particularly when defendants said they noticed the excessive tint while the minivan passed by defendants on the road. Second, both defendants testified that after stopping the minivan, they did not inspect the windows to determine whether they were illegally tinted… Viewing the facts in the light most favorable to plaintiffs, it cannot be said as a matter of law that the defendants had probable cause to stop the minivan for illegally tinted windows. Thus, summary judgment is not appropriate on this ground.* See Exhibit 8.

The *Climer* case parallels the case at bar.  Mr. Clark-Reed was driving legally and not violating any laws.  Defendants had no means by which to inspect the windows and determine whether or not they were in fact illegal.  It was 9:30 pm, which sheds some doubt on the defendants' ability to see whether the windows were tinted illegally.  In the case at bar, *"viewing the facts in the light most favorable to [Plaintiff-Decedent], it cannot be said as a matter of law that the defendants had probable cause to stop the Plaintiff-Decedent for illegally tinted windows"*.

**2. There is Virtually No Distinction in Appearance Between Illegal Tinting Applied by Material, Application, or Film, and the Legal Tinting Achieved through a Coloration of the Windows, Thus the Defendant**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Officers Could Not Have determined that Plaintiff-Decedent's Windows were in Violation of *M.C.L. § 257.709*.**

In *U.S. v. Fordham, Criminal Case No. 05-50009. (E.D. Mich. Nov. 2, 2005),* the officers' pulled over Defendant Fordham's for driving with darkly tinted driver and front passenger side windows, in violation of *M.C.L. § 257.709*. Pursuant to a search, Fordham was charged with Possession with Intent to Distribute 5 Grams or More of Cocaine. Defendant filed a motion to suppress evidence; and the Court granted Defendant's motion.

The Court held that *M.C.L. § 257.709* **prohibits tinting that is a material, application, or film.** *M.C.L. § 257.709(1)(a)* refers to *"[a] nontransparent material, window application, reflective film, or nonreflective film."* **Tinting that is within the window itself, rather than a separate material applied to the windows, is not prohibited by the statute.** This does not mean that any amount of tinting in the front windows is permissible so long as it is accomplished by a coloration of the glass. Such glass is regulated by *National Transportation Safety Regulation 49 C.F.R. § 571.205*, which effectively limits tinting of the glass itself to 35 percent. Further, the Court stated:

> ***Because there is virtually no distinction in appearance between the illegal tinting applied to Defendant's front windows and the legal tinting achieved through a coloration of the windows, the officers could not have determined that Defendant's windows were a violation of M.C.L. § 257.709*** *when Officer Fowlkes shone his stoplight on Defendant's vehicle.* See Exhibit 9.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

The *Fordham* case parallels the case at bar.  The Defendants at the time of

Plaintiff-Decedent's arrest could not establish (1) whether the window tint

exceeded 35%; nor (2) whether the vehicle had a material application, film tint, or

the tint was within the windows.  Clearly, the Defendants had no probable cause

for the search, seizure, or the arrest.  Moreover, the statute exempts cars driven by

people with doctors' notes.  There is no evidence in the record that the Officers had

knowledge as to whether the Plaintiff-Decedent possessed a doctor's note prior to

his seizure, search, and arrest.  Since the Officers could not determine, prior to

stopping the vehicle, whether the window tint was factory installed; whether the

driver was in possession a letter signed by a physician or optometrist, indicating

that the special window treatment or application is a medical necessity; nor the

degree/percentage of the window tint, the traffic stop was illegal[4].

## B. THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY FOR THE EXCESSIVE FORCE UTILIZED DURING THE ARREST, SEARCH AND SEIZURE OF THE PLAINTIFF-DECEDENT.

Defendants assert that they are entitled to immunity because they did not

violate the Plaintiffs' constitutional rights.  In cases involving claims of excessive

force, the Court evaluates the constitutional claim under the Fourth Amendment

---

[4] See also *Delaware v. Prouse*, *440 U.S. 648 (1979)*, in which the U.S. Supreme Court concluded that a police officer on a "roving patrol" aimed at detecting unlicensed drivers made a suspicionless stop of an automobile.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

"objective reasonableness" test. *Tennessee v. Garner, 471 U.S. 1, 7 (1985)*. That test inquires "whether the officers' actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Moreover, "the use of deadly force is only constitutionally reasonable if the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officers or to others." *Summerland v. Cty. of Livingston,* 240 F. App'x 70, 76 (6th Cir. 2007) (quoting *Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir. 2005)).

To determine whether an official is entitled to qualified immunity, courts ask "whether the facts, when taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; . . . whether the right violated was clearly established such that "a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz, 533 U.S. 194, 201–02 (2001)*, overruled on other grounds by *Pearson, 555 U.S. at 229.* In the case at bar, clearly the seizure, and the force used, was unreasonable in light of the circumstances. *See, e.g. Mullins v. Cyranek, 805 F.3d 760, 765 (6th Cir. 2015).*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

### Prong 1: Reasonableness

In the context of excessive force, the Court segments the incident to isolate the particular use of force that is allegedly excessive. *Dickerson v. McClellan, 101 F.3d 1151, 1161–62 (6th Cir. 1996)* (citing cases in which the courts "look to the split second before the officer had to decide what to do"). "[W]hether the use of deadly force at a particular moment is reasonable depends primarily on an objective assessment of the danger a suspect poses at that moment." *Bouggess v. Mattingly, 482 F.3d 886, 889 (6th Cir. 2007).* The Supreme Court in *Graham* identified three factors to determine the reasonableness of force, including "(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the police officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Graham*, 490 U.S. at 396.

In the case at bar, it is clear that (1) the civil offense of allegedly driving with tinted windows is not a crime at all, and clearly not one of high severity; (2) at the time Plaintiff-Decedent exited his vehicle there is no evidence that he posed an immediate threat to the Defendant Officers; and (3) there is no evidence that the Plaintiff-Decedent attempted to evade arrest by flight. Clearly, forcing the 376 lb. Plaintiff-Decedent to exit his vehicle with his hands on his head; get on his knees with his hands on his head; lay upon his stomach while maintaining his hands upon

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

his head; and then sitting upon him to handcuff him was unreasonable and excessive.

Moreover, requiring the Plaintiff-Decedent to remain handcuffed after determining that he was unarmed, and denying him the opportunity to administer his own inhaler because he was "breathing effusively" was unreasonable, excessive, and constituted deliberate indifference. Deliberate indifference occurs when the police injure a person while apprehending him, and they intentionally or recklessly delay his access to appropriate medical care.    See *Rich v. City of Mayfield Heights, 955 F.2d 1092, 1097–98 (6th Cir. 1992).*

Time and again, the 6th Circuit has said that nervousness—even extreme nervousness—"is an unreliable indicator" of someone's dangerousness, "especially in the context of a traffic stop." *United States v. Richardson, 385 F.3d 625, 630 (6th Cir.2004); see, e.g., Wilson,* 506 F.3d at 495–96 ("Nervous behavior, standing alone, is not enough to justify a *Terry* search."); *United States v. Henry, 429 F.3d 603, 613 (6th Cir.2005)* ("[W]e have repeatedly discounted the value of nervousness in the reasonable- suspicion calculus."); *United States v. Noble, 364 Fed. Appx. 961, 970–71 (6th Cir.2010)* (Moore, J., dissenting) (collecting other cases). After all, "[m]any citizens become nervous during a traffic stop, even when they have nothing to hide or fear." *Richardson,* 385 F.3d at 630–31.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Further, see *Getz v. Swoap, 833 F.3d 646 (6th Cir. 2016)* **in which the**

**police removed the handcuffs from an extremely unruly arrestee in order that**

**he might administer his own inhaler.** At or around 7:20 p.m. on November 27,

2011, Deputy Jody Swoap was sitting in his police cruiser. While observing traffic,

he saw an oncoming Chevrolet pass him with only one operational headlight.

Robert Getz was driving. Swoap turned and followed the vehicle. As Getz turned

south, Swoap switched on his overhead lights, but Getz did not immediately pull

over. Swoap followed until Getz turned into a residential driveway. Getz did not

stop in the driveway but instead passed the house, continuing down the driveway

until he reached a barn. Getz circled around in front of the barn and drove the car

back in Swoap's direction, stopping only once he was, according to Swoap,

"bumper to bumper to me close enough to where I could not read his license

plate." Swoap described Getz at this point as appearing "agitated ... [h]is mouth

and his forehead just looked like he was not happy." As Swoap was radioing the

car's description to dispatch, Getz's car lunged forward a short distance, started to

back up, and then angled as though to drive around Swoap's cruiser. To prevent

Getz from leaving the driveway, Swoap moved the cruiser and positioned it so that

Getz could not drive around him. Getz's car continued to approach the cruiser,

which was now blocking the driveway. Swoap exited the cruiser, stood in the

driveway, and yelled for Getz to stop. Getz, however, continued to drive slowly

toward Swoap as Swoap repeatedly told Getz to stop. Eventually, Swoap drew his

sidearm and again directed Getz to stop, shut off the car, and exit the vehicle. This

time Getz complied. Once Getz was out of the car and it was obvious he was not

armed, Swoap holstered his gun. Getz was angry. Swoap stated that Getz told him

to "get the fuck off his property." When Swoap told Getz the reason for the traffic

stop and asked Getz for his name, Getz yelled, "Do you know who I am?

Everybody knows who I am." Getz continued to yell and argue until Getz said

"fuck this" or "screw this, I'm leaving." Swoap informed Getz several times that he

was not free to leave, but Getz got back in his car. At this point Swoap called for

backup. Then, with Getz seated in his car gripping the steering wheel, Swoap

reached into the car and attempted to remove Getz's left hand from the wheel while

ordering him out of the car. Getz resisted, pushing Swoap away with his shoulder

and generally pulling away from Swoap. Swoap finally pulled Getz out of the car,

informed him that he was under arrest, and ordered him to put his hands behind his

back. Swoap again called for backup, this time telling dispatch to "step it up,"

which Swoap says signaled that "there was a serious potential for somebody to get

hurt or there's force being used and I needed somebody there quickly." Getz

refused to put his hands behind his back and said he was going inside the house.

When Getz walked toward the front of the police cruiser in the direction of his

house, Swoap informed him that he was not allowed to enter the house and that he

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

needed to place his hands behind his back. Swoap grabbed Getz's upper arm as he told him to place his arms behind his back. When Getz failed to comply Swoap performed a hip-check maneuver to unbalance Getz, gain control of him, and handcuff him. In response, Getz turned around and sprawled chest down over the hood of the cruiser gripping opposite ends of the hood, making application of the handcuffs more difficult. Swoap repeatedly ordered Getz to put his hands behind his back but eventually had to grab Getz's right arm and rotate Getz's body around towards his left arm so that he could place the handcuffs on both wrists. After the cuffs were on, he told Getz to walk to the other side of the cruiser, but Getz continued to resist and again pulled away, saying he was going into the house. Swoap maintained control and walked Getz to the other side of the cruiser, though Getz was still noncompliant and "locked up his legs ... [and] his upper body," refusing to follow Swoap's directions. **After putting Getz in the cruiser, shortly thereafter Swoap removed the handcuffs from Getz to allow Getz to use his inhaler. Swoap estimates that Getz was handcuffed "[p]robably less than five [minutes]."** See Exhibit 10.

Clearly, in the case at bar, the Defendants' actions were excessive and deliberately indifferent when they compelled Mr. Clark-Reed, a non-violent cooperative man, to remain handcuffed while utilizing his inhaler.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

### Prong 2: Clearly Established Right

The second prong of the qualified immunity analysis is whether the constitutional right was clearly established at the time of the officer's conduct. See *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

As established above, the evidence, construed in favor of Plaintiff, would allow a reasonable jury to conclude that  forcing the Plaintiff-Decedent to exit his vehicle with his hands on his head; get on his knees with his hands on his head; lay upon his stomach while maintaining his hands upon his head; and then sitting upon him to handcuff him was unreasonable and excessive.  Thus, the right at issue is the right to be free from the use of deadly and gratuitous force when a person is not fleeing nor threatening.

At least since *Garner* was decided in 1985, officers have been on notice that "where the person poses no immediate threat to the officer and no threat to others" the use of deadly force is unreasonable. 471 U.S. at 12. The Sixth Circuit has clarified and defined the outer limits of reasonable force by repeatedly recognizing "the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest." *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006). Likewise, "there are a number of cases explicitly addressing the illegality of using 'non-lethal, temporarily incapacitating force on a person who no longer poses a safety threat, flight risk, and/or is not resisting arrest.'" *Wells, 538*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

*F. A'ppx at 638 (quoting Michaels, 539 F. Supp. 2d at 985–86).*   Further, see

*Champion v. Outlook Nashville, Inc.,380 F.3d 893, 901 (6th Cir.2004),* in which

the Court **held that applying pressure to the back of a prone suspect who no**

**longer resists arrest and poses no flight risk is an objectively unreasonable use**

**of force.**   See Exhibit 11.   See also *Martin v City of Broadview Heights, 712 F.3d*

*951 (6th Cir. 2013)*; *Simpson v. Hines, 903 F.2d 400, 401(5th Cir.1990).*   See

Exhibit 12.

Viewing the facts in the light most favorable to Plaintiff, Defendants

violated clearly established rights of the Plaintiff-Decedent, and qualified

immunity should be denied.   In *Sova v. City of Mt. Pleasant, 142 F.3d*

*898, 903 (6th Cir. 1998),* the Court stated:

> This Court has established that summary judgment is
> inappropriate where there are contentious factual disputes over
> the reasonableness of the use of deadly force… Brandenburg v.
> Cureton, 882 F.2d 211, 215-16 (6th Cir. 1989)… <u>Where, as here,</u>
> <u>the legal question of qualified immunity turns upon which</u>
> <u>version of the facts one accepts, the jury, not the judge, must</u>
> <u>determine liability.</u> See Buckner v. Kilgore, 36 F.3d 536,
> 540 (6th Cir. 1994); Adams v. Metiva, 31 F.3d 375, 387 (6th Cir.
> 1994); Walton v. City of Southfield, 995 F.2d 1331, 1342 (6th
> Cir. 1993); Washington v. Newsom, 977 F.2d 991, 995-96 (6th
> Cir. 1992); Yates v. City of Cleveland, 941 F.2d 444, 447 (6th
> Cir. 1991). <u>This is especially true considering that the District</u>
> <u>Court must view the facts in the light most favorable to the</u>
> <u>plaintiff on a motion for summary judgment.</u> See Dickerson v.
> McClellan, 101 F.3d 1151, 1162 (6th Cir. 1996); Adams, 31
> F.3d at 384.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

As in the *Sova* case, a question of fact exists in the case at bar as to whether the Plaintiff-Decedent posed an immediate threat to the Defendant Police Officers or others warranting the type of force and restraint utilized during the arrest, search, and seizure.

## C. THE CITY OF DETROIT ACQUIESCED IN THE UNCONSTITUTIONAL DEPRIVATION OF PLAINTIFF-DECEDENTS' CIVIL RIGHTS.

A municipality may be liable under § 1983 if "a municipal policy or policy of inaction was the moving force behind the violation." *Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v City of Memphis,* 361 F.3d at 902 *(citing City of Canton v. Harris, 489 U.S. 378, 379, 103 L.Ed. 2d, 412, 109 S. Ct. 1197 (1989)).* "A municipal *custom* may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Id. at 902-03* (internal quotations omitted) (emphasis added). "A city's deliberate indifference to the rights of its inhabitants" supports a "city policy or custom that is actionable under §1983." *City of Memphis*, 361 F.3d at 904. It is clear that in the case at bar, that after investigation, the City of Detroit acquiesced in, and ratified the unconstitutional acts of the Defendant Officers.

## D. PLAINTIFF ALLEGES A VIABLE CLAIM UNDER THE MICHIGAN CONSTITUTION.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In Michigan, "[w]here it is alleged that the state, by virtue of custom or policy, has violated a right conferred by the Michigan Constitution, governmental immunity is not available..." *Smith v. Dept. of Public Health, 410 N.W.2d 749, 751(Mich. 1987), aff'd, Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989)*. The Michigan Supreme Court in *Smith* recognized that a plaintiff can recover "damages against the state arising from violation by the state of the Michigan Constitution . . . in appropriate cases." *410 N.W.2d at 751. Smith,* in essence, incorporated *Monell* as the standard governing recovery for all violations of Michigan's Constitution, those committed by the government as well as those caused by its employees. See *Smith, 410 N.W.2d at 751; Bills v. Aseltine, 52 F.3d 596, 600-01 (6th Cir. 1995); Pleasant v. Zamieski, 895 F.2d 272, 278 (6th Cir. 1990)*. Michigan municipalities can also be held liable for constitutional violations, provided the plaintiff's damages were the result of an unconstitutional policy or custom. *Stamps v. City of Taylor, 554 N.W.2d 603, 607 (Mich.Ct.App. 1996), appeal denied, 568 N.W.2d 87 (Mich. 1997)*. It is clear that in the case at bar, that after investigation, the City of Detroit acquiesced in, and ratified the unconstitutional acts of the Defendant Officers.

## VI.    CONCLUSION

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WHEREFORE, Plaintiff request that Defendants' Motion for Summary

Judgment be denied, and that Plaintiff be granted cost and attorney fees for having

to defend this Motion.

Date:  April 4, 2019                     Respectfully submitted,

                                         /s/Herbert A. Sanders
                                         Herbert A. Sanders (P43031)


## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2019, I electronically filed Plaintiff's Response to

Defendant's Motion for Summary Judgment with the Clerk of the Court using the

ECF system which will send notification of such filing to all Defendants.

Dated: April 4, 2019                     /s/ Herbert A. Sanders
                                         THE SANDERS LAW FIRM, P.C.
                                         Attorney for Plaintiff