United States District Court
Eastern District of Michigan
Southern Division

---

LEDA REED, as the Personal
Representative of the Estate of
Anthony Demone Clark-Reed

       Plaintiff,                   CASE No. 4:18-cv-10427-LVP-EAS
                                            Hon. Linda V. Parker
                                            Magistrate Judge Elizabeth A. Stafford

v.

THE CITY OF DETROIT,
OFFICER TRACY MORENO,
OFFICER ROBIN CARVER,
OFFICER ERIC CARTHAN,
Detroit Police Officers, in their
official capacities and individually,
jointly and severally.
                Defendants.

CRYSTAL B. OLMSTEAD (P69202)     HERBERT A. SANDERS (P43031)
City of Detroit Legal Department         Attorney for Plaintiff
Attorney for Defendants                      615 Griswold St, Ste. 913
2 Woodward Ave., 5th Floor              Detroit MI 48226
Coleman A. Young Municipal Ctr.      (313) 962-0099
Detroit, MI 48226                                haslawpc@gmail.com
(313) 237-5035
olmsteadc@detroitmi.gov

Shawndrica N. Simmons (P70608)
77 Bagley Street
Pontiac, MI 48341
(248) 732-0168
Fax: (248) 268-0168
legalservices@shawndricasimmons.com

# DEFENDANTS CITY OF DETROIT, TRACY MORENO, ROBIN CARVER AND ERIC CARTHAN'S
# REPLY TO PLAINTIFF'S RESPONSE TO CITY'S MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

LEGAL ARGUMENT ..............................................................................................1

    A.    The Plaintiff cannot establish a cause of action for unlawful arrest under the 4th Amendment because the officers had probable cause for the traffic stop. .................................................................................................................1

    B.    The officers did not use excessive force during the arrest and are entitled to qualified immunity. ................................................................................................3

PRAYER FOR RELIEF ...........................................................................................9

# TABLE OF AUTHORITIES

## **CASES**

*Brinegar v. United States,*
   338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). ..........................2

*Champion v Outlook Nashville, Inc*,
   380 F3d 893, 905 (CA 6, 2004)..................................................................5, 6

*Craig v. Oakwood Hosp.*,
   471 Mich. 67, 93, 684 N.W.2d 296 (2004). ......................................................7,8

*Estate of Brackens v Louisville Jefferson Co Metro Govt*,
   680 Fed Appx 362 (CA 6, 2017) ........................................................................8

*Getz v Swoap*,
   833 F3d 646, 651 (CA 6, 2016).......................................................................3, 4

*Heien v North Carolina*
   135 S Ct 530, 532; 190 L Ed 2d 475 (US, 2014) ..................................................2

*Illinois v Gates*,
   462 US 213, 231; 103 S Ct 2317, 2328; 76 L Ed 2d 527 (1983)..........................3

U.S v Fordham Criminal Case No. 05-50009..........................................................1

*United States v. Jackson*,
   682 F.3d 448 (6th Cir. 2012 .................................................................................5

*Whren v. United States,*
   517 U.S. 806, 813;116 S.Ct. 1769, 1774; 135 L.Ed.2d 89 (1996)........................1

*Wiley, supra* at 496, 668 N.W.2d 402.....................................................................5

## **STATUTES**

MCL 257.509 ...........................................................................................................1

MCL 257.709 ...........................................................................................................

# **LEGAL ARGUMENT**

**A. The Plaintiff cannot establish a cause of action for unlawful arrest under the 4th Amendment because the officers had probable cause for the traffic stop.**

First, this writer must state that *even if* Plaintiff's argument that the tinted windows was a *pretextual* basis for the stop, the stop would *still be valid.* This issue has been firmly decided for over twenty years. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v United States*, 517 US 806, 813; 116 S Ct 1769, 1774; 135 L Ed 2d 89 (1996).

Second, Plaintiff's response claims that the officer's stop lacked probable cause based on an unpublished Order following a suppression hearing in U.S v Fordham Criminal Case No. 05-50009.  Essentially the court in *Fordham* interprets MCL 257.509 as applying only to "after market applications of window treatment as opposed to "tinting that is in the window itself."  Assuming arguendo that this is an accurate assessment of the statute, the stop is still valid. It is undisputed that the front and passenger side windows were treated with a tint application; hence the prohibition stated in MCL 257.709 is still applicable.  **(See Plaintiff's Affidavit of Squandra Barbee).**

Finally, the officers relied upon *their reasonable interpretation* of MCL 257.509. The officers interpret the statute as prohibiting window tinting extending

1

*beyond four inches* on the front side and passenger window. Even if the Plaintiff's interpretation of the statute was accurate, the stop would still be valid based on *Heien v North Carolina,* 135 S Ct 530, 532; 190 L Ed 2d 475 (US, 2014). An officer's *reasonable* mistake as to fact and law are both protected by qualified immunity. It is well known that manufactures do not tint windows due to the fact that the laws regarding tinting vary from state to state. Hence, virtually all windows that are tinted are done via an aftermarket tinting application. The officers' reasonable interpretation of seeing deeply tinted windows is that said windows were tinted via an illegal film application. The car in question was a Dodge Charger. This is a vehicle that is commonly used by police throughout the country. The officers in this case were fully aware that the manufacture does not tint Dodge Charger windows. **(See Exhibit A: Affidavit of Officer Eric Carthan).**

Probable cause turns on reasonableness. Hence, an officer simply has to have a reasonable belief that a crime or infraction has been committed. "Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a "practical, nontechnical conception." *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). "In dealing with probable cause, ... as the very name implies, we deal with *probabilities*. These are not technical; they are the *factual and practical* considerations of *everyday life* on

which *reasonable and prudent men*, not *legal technicians, act*." *Id.,* at 175, 69 S.Ct., at 1310. *Illinois v Gates*, 462 US 213, 231; 103 S Ct 2317, 2328; 76 L Ed 2d 527 (1983). (emphasis added). As such, the officers clearly had probable cause to believe that Mr. Clark-Reed had committed the traffic offense and Summary Judgment is appropriate.

**B. The officers did not use excessive force during the arrest and are entitled to qualified immunity.**

Plaintiff's response is based on the flawed premise that the officers used "deadly force." However, nothing within this case shows a use of deadly force. The fact that Plaintiff died *does not* suffice for *evidence* of the use of deadly force. Plaintiff relies heavily on *Getz v Swoap*, 833 F3d 646, 651 (CA 6, 2016) for the proposition that the officers were deliberately indifferent for not removing the handcuffs from Mr. Clark-Reed to allow him to administer his inhaler. Unfortunately, *Swoap* does not stand for this proposition. The question at issue in *Swoap* was whether Officer Getz used excessive force in: (1) applying the handcuffs and (2) keeping Mr. Swoap in handcuffs after he complained of pain. The trial court granted Officer Getz's motion for summary judgment and the 6th Circuit affirmed.

In *Swoap* the court had to weigh the testimony of four witnesses at the scene-Mr. Swoap, Officer Getz, Sergeant Sprees, Mr. Swoap's wife and Mr.

3

Swoap's daughter. The deposition testimonies showed that *after* Mr. Swoap was handcuffed Officer Getz asked him if he needed medical attention. Mr. Swoap stated that he needed his oxygen from inside his home for a breathing problem. Officer Getz *did not* immediately remove the handcuffs to allow Mr. Swoap to go inside his home to use his inhaler. In fact, there was a deal of back and forth between Mr. Swoap, Officer Getz and Sergeant Spees prior to removal of the handcuffs. Swoap's daughter claimed that Mr. Swoap was in handcuffs for twenty minutes. The other evidence indicated that Mr. Swoap was in handcuffs for "[p]robably less than five [minutes]." Id at 651.

Hence, contrary to Plaintiff's assertions, *Swoap* does not stand for the proposition that the officers must immediately remove handcuffs to allow a person to use an inhaler. To the contrary, Mr. *Swoap* alerted the officer for the need for his oxygen and Officer Getz *kept him in handcuffs*. It was not until Sergeant Spees informed Officer Getz that Mr. Swoap was bleeding that he removed the handcuffs and allowed Mr. Swoap to enter his home clean himself up and to use his inhaler. By all indications this was approximately five minutes later. "After putting Getz in the cruiser, Spees returned to ask Swoap if he was aware that Getz was bleeding. Swoap said he was not. Shortly thereafter Swoap says he removed the handcuffs from Getz to allow Getz to use his inhaler. Swoap estimates that Getz was handcuffed "[p]robably less than five [minutes]." Id at 651.

4

Similarly to *Swoap*, Officer Moreno did not immediately remove the handcuffs from Mr. Clark-Reed upon learning that he was having breathing problems. In *Swoap*, Mr. Swoap was leaning against the car for some time in handcuffs. He was sitting in the back of the cruiser for some time in handcuffs. In the instant case, things developed rapidly. Mr. Clark-Reed collapsed almost immediately after being taken to the cruiser and Officer Moreno immediately removed the cuffs and began life saving measures and called the EMS. Nothing about the situation begins to rise to the level of excessive force or deliberate indifference. Finally, even assuming arguendo that *Swoap* stood for the proposition that Plaintiff asserts (which it does not), the officers would still be entitled to summary judgment. The qualified immunity analysis has multiple prongs. Plaintiff has to also show that the right was "clearly established." The incident in question occurred on March 30, 2015. The 6th Circuit issued its opinion in *Swoap* on August 18, 2016. A right cannot be clearly established through case law that was not in existence at the time of the incident. As such, the officers are entitled to summary judgment.

Plaintiff also relies upon *Champion v Outlook Nashville, Inc*, 380 F3d 893, 905 (CA 6, 2004) for the proposition that Officer Moreno violated Mr. Clark-Reed's constitutional right by sitting on him. However, Champion is easily distinguishable. *Champion* is an extreme case in which taking the facts in the light

most favorable to the Plaintiff, *multiple officers*: (1) pepper sprayed a mentally disabled man, (2) laid on the Plaintiff for some extended period of time--- all while the Plaintiff was subdued and in handcuffs. The court in Champion opined as follows:

> No reasonable officer would have continued to spray a chemical agent in the face of a handcuffed and hobbled mentally retarded arrestee, who was moving his or her head from side to side in an attempt to breathe, after the arrestee vomited several times. No reasonable officer would continue to put pressure on that arrestee's back *after the arrestee* was *subdued by handcuffs, an ankle restraint, and a police officer holding the arrestee's legs.*

The instant case is not even remotely similar. Officer Moreno testified as follows:

.
> Q. So, he goes to his knees and then he goes to his stomach on the ground. Then what happens next?
> A. I began to stand over him.
> Q. Okay.
> A. And I ended up taking his left and right hand, pulling them back to his small o          of his back area, because he was a very large individual. ***For a brief moment***, I was on him, going from left to right to secure his left and right wrist with handcuffs.
>
> Q   Okay. What do you mean, you were on him?
> A   I **might** have sat on the small of his back area right above the buttocks.
> Q.  And you sit on the small of his back, above his buttocks. What happens next?

6

A. **He was handcuffed** -- (Exhibit B: Officer Moreno's Deposition transcript).

The deposition testimony presents mere speculation that Moreno *may* have sat on Mr. Clark-Reed's back. "Where the connection between the defendant's negligent conduct and the plaintiff's injuries is entirely speculative, the plaintiff cannot establish a prima facie case of negligence." *Craig v. Oakwood Hosp.,* 471 Mich. 67, 93, 684 N.W.2d 296 (2004). "An explanation that is consistent with known facts but not deducible from them is impermissible conjecture." *Wiley, supra* at 496, 668 N.W.2d 402.

However, even assuming arguendo that mere speculation counts as evidence, this still does not rise to the level of excessive force like the situation in *Champion*. First, unlike *Champion* it is clear that Officer Moreno testified that this speculative action only lasted a "brief moment" while Officer Moreno tried to maneuver to get the handcuffs on. Second, unlike Champion this action was not taken after Plaintiff was throwing up multiple times and showing signs of distress. Third, Mr. Clark-Reed was *not in handcuffs*. Finally, the undisputed video evidence shows it is clear that *a mere second* passes from the time that Clark-Reed is on the ground to the point in which he is rolled over onto his back. Hence, Officer Moreno is entitled to Summary Judgment. The other officer defendants are also entitled to summary on

7

the excessive force claims because Plaintiff failed to show that they took any action against Plaintiff. "If multiple officers are alleged to have violated Plaintiff's rights, each officer's conduct must be analyzed individually. "Each defendant's liability must be assessed individually based on his own actions." *Binay*, 601 F.3d at 650.

Finally, it must be noted that Dr. Werner U. Spitz's expert report lends nothing to the analysis of whether the officers are entitled to qualified immunity. Dr. Spitz's report states that "But for ineffective use of an inhaler, Clark-Reed would not have died." (See Plaintiff's Response Brief Exhibit 6). Dr. Spitz's report - at best -creates a question of fact as to "cause of death." However, cause of death should not be conflated with the analysis of whether a particular use of force was reasonable for qualified immunity purposes. Specifically, an officer's actions can be the cause of serious injury and the officer's actions can still be reasonable for purposes of qualified immunity. That was the situation in *Estate of Brackens v Louisville Jefferson Co Metro Govt*, 680 Fed Appx 362 (CA 6, 2017). Mr. Brakens had several health issues that made him more susptible to injury similar to Mr. Reed.[1] The officers caused severe injury to Mr. Brackens, but the

---

[1] Q. Do you know if Anthony had ever had to go to the hospital before as a result of an asthma attack?
  A. He went I think two days before he got pulled over or the day before.

8

Court still held that the force used was reasonable. The analysis does not revolve around the *actual injury suffered*, but the *reason for* the actual force used. Also, Plaintiff cites no case law that states that an officer is liable for impropely administered medical aid including but not limited to adminstration of an inhaler. As such, the officers would still be entitled to qualified immunity.

### PRAYER FOR RELIEF

WHEREFORE, Defendants City of Detroit, Tracy Moreno, Eric Carthan and Robin Carver respectfully request that this Honorable Court dismiss all claims against them, together with costs and any other relief deemed just and appropriate under the circumstances.

Dated: April 25, 2019

Respectfully submitted,

/s/ Crystal B. Olmstead
CRYSTAL B. OLMSTEAD (P69202)
City of Detroit Legal Department
Attorney for Defendants

---

```
Q. The day before?
A. (Nodding yes.)
Q. What was the circumstance surrounding that?
A. He couldn't breathe. He couldn't catch his breath
    so he went to the hospital, that's why he was home.
   (Exhibit C: Leda Reed Deposition p. 60-61)
```

9

## PROOF OF SERVICE

I certify that on April 25, 2019, the foregoing paper(s) including exhibits, were served upon the above named counsel(s) of record through the ECF filing system.

I declare that the foregoing is true to the best of my knowledge, information and belief

/s/ Crystal B. Olmstead