UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEDA REED, as the Personal
Representative of the Estate of
Anthony Demone Clark-Reed,

        Plaintiff,

v.

THE CITY OF DETROIT,
OFFICER TRACY MORENO,
OFFICER ROBIN CARVER, and
OFFICER ERIC CARTHAN,

        Defendants.

_____/

Civil Case No. 18-10427
Honorable Linda V. Parker

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This lawsuit arises from a traffic stop on March 31, 2015, which led to the

tragic death of Plaintiff's decedent, Anthony Demone Clark-Reed ("Mr. Clark-

Reed").  On August 18, 2018, Plaintiff filed a Complaint against Defendants in

state court, which Defendants thereafter removed to federal court based on federal

question jurisdiction, 28 U.S.C. § 1331.  Plaintiff asserts the following claims

under 42 U.S.C. § 1983 in her Complaint: (I) false arrest in violation of the Fourth

Amendment; (II) "deliberate indifference excessive force in violation of Due

Process" and the Fourth Amendment; (III) Fourteenth Amendment substantive due

process violations; and (IV) municipal liability for constitutional violations.  In a

fifth count, Plaintiff also asserts the same violations under the Michigan

Constitution.

The matter is presently before the Court on Defendants' motion for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No.

20.) The motion has been fully briefed. (ECF Nos. 25, 28.) Finding the facts and

legal issues sufficiently presented in the parties' briefs, the Court is dispensing

with oral argument with respect to Defendants' motion pursuant to Eastern District

of Michigan Local Rule 7.1(f). For the reasons that follow, the Court is granting in

part and denying in part Defendants' motion.

## I.      Summary Judgment Standard

Summary judgment under Rule 56 is appropriate "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is

"whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time

for discovery and upon motion, Rule 56 mandates summary judgment against a

party who fails to establish the existence of an element essential to that party's case

and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). Notably, the trial court is not required to construct a party's argument from the record or search out facts from the record supporting those arguments. *See, e.g., Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact") (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)); *see also InterRoyal Corp. v.*

*Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied* 494 U.S. 1091 (1990)

("A district court is not required to speculate on which portion of the record the

nonmoving party relies, nor is it obligated to wade through and search the entire

record for some specific facts that might support the nonmoving party's claim.").

The parties are required to designate with specificity the portions of the record

such that the court can "readily identify the facts upon which the . . . party

relies[.]" *InterRoyal Corp.*, 889 F.2d at 111.

## II.    Factual Background[1]

On March 31, 2015, at approximately 9:30 p.m., City of Detroit Police

Officers Tracy Moreno, Robin Carver, and Eric Carthan were on patrol in the area

of Vernor Avenue and Mullane Street in a partially marked scout car.  Officer

Moreno was driving the car.  Officer Carver was the front passenger and Officer

Carthan was the rear passenger.  The officers were part of a Special Operations

Unit tasked with looking for narcotics, gang activity, and weapon offenses.

As the officers traveled eastbound on Vernor, they noticed Mr. Clark-Reed's

burgundy Dodge Charger, which was stopped at a traffic light and headed

---

[1] Except where noted, the facts are taken from the Defendant Officers' incident
reports and the deposition testimony of Officers Moreno and Carthan.  If Officer
Carver was deposed, a transcript from his deposition was not introduced into the
record.  Defendants also submitted surveillance video from a nearby business in
support of their motion; however, the video is not very helpful in developing the
facts (except where noted infra).

westbound. Concluding that the Charger's front driver and passenger side windows were tinted in violation of Michigan law, Michigan Compiled Laws § 257.709, Officer Moreno did a U-turn and pulled behind the Charger. After the traffic light turned green, Officer Moreno activated the patrol car's overhead flashing lights and sirens to initiate a traffic stop.

The officers' police reports reflect that Mr. Clark-Reed continued to drive the Charger westbound, during which time the officers observed him leaning, reaching, or lunging (the officers used different descriptions) toward the passenger side of the vehicle. Officer Carthan indicated in his report that his observations of Mr. Clark-Reed's movements suggested "he was hiding something like drugs or a gun …." (Defs.' Mot. Ex. B at 1, ECF No. 20-1 at Pg ID 135.) At their depositions, Officer Carthan and Officer Moreno provided different answers when asked about the number of blocks Mr. Clark-Reed drove before pulling over. (Pl.'s Mot. Ex. 1 at 14, ECF No. 25-2 at Pg ID 223; Ex. 3 at 18, ECF No. 25-4 at Pg ID 297.) Both agree, however, that Mr. Clark-Reed pulled the Charger to the side of the road between Lawndale Street and Cabot Street.

The officers exited the patrol car and slowly approached the Charger, with Officer Moreno approaching the driver's side and Officers Carver and Carthan approaching the passenger's side. Officer Moreno gave loud verbal commands for Mr. Clark-Reed to roll down all the car windows, which Mr. Clark-Reed did.

5

Officer Moreno next instructed Mr. Clark-Reed to turn off the car and then place his hands behind his head and interlock his fingers. Mr. Clark-Reed complied. According to Officer Moreno, as he approached the driver's door, Mr. Clark-Reed quickly moved his right hand from his head, causing Officer Moreno to instruct him a second time to place his hands behind his head. (Pl.'s Mot. Ex. 3 at 24-25, ECF No. 25-4 at Pg ID 303-04; Defs.' Mot. Ex. A at 1, ECF No. 20-1 at Pg ID 131.) In his incident report, however, Officer Carthan testified that Officer Moreno instructed Mr. Clark-Reed to put his hands on his head only one time while Mr. Clark-Reed was inside his vehicle.[2] (Defs.' Mot. Ex. B at 1, ECF No. 20-1 at Pg ID 135.)

Once Officer Moreno reached the driver's door, he opened it, put his hands over Mr. Clark-Reed's hands, and asked Mr. Clark-Reed to slowly exit the vehicle. In his police report, Officer Moreno indicates that he instructed Mr. Clark-Reed to lay on the ground due to his size (376 pounds). (Defs.' Mot. Ex. A at 1, ECF No. 20-1 at Pg ID 131.) When Mr. Clark-Reed complied, Officer Moreno began to place handcuffs on him. Officer Moreno testified during his deposition that "[f]or a brief moment" he may have sat on the small of Mr. Clark-Reed's back area, right above his buttocks, to handcuff him. (Pl.'s Resp. Ex. 3 at 33, ECF No. 25-4 at Pg

---

[2] According to Officer Carthan, Officer Moreno told Mr. Clark-Reed to keep his hands on top of his head as he ordered him out of the vehicle. (Defs.' Mot. Ex. B at 1, ECF No. 20-1 at Pg ID 135.)

ID 312.)  The video of the incident reflects that before Mr. Clark-Reed exited the

vehicle, Officer Carthan had walked over to the driver's side and was standing

close to Officer Moreno.  During his deposition, Officer Carthan also stated that he

assisted Officer Moreno in handcuffing Mr. Clark-Reed.  (Pl.'s Resp. Ex. 1 at 17,

ECF No. 25-2 at Pg ID 226.)

Officer Moreno testified that he asked Mr. Clark-Reed to exit the vehicle

due to his failure to pull over immediately, the movements he made before

stopping the Charger, and his inability to comply with the officer's verbal

commands to keep his hands on his head.  (*Id.* at 28, Pg ID 307.)  Officer Carthan

surmised that Officer Moreno ordered Mr. Clark-Reed to the ground and

handcuffed him for safety because the "movements in that car from the time we

activated the lights until the time he finally pulled over later was drawing our

suspicion …" (*Id.* Ex. 1 at 17, ECF No. 25-2 at Pg ID 226).  Officer Carthan

acknowledged at his deposition, however, that after the traffic stop was initiated,

Mr. Clark-Reed did not speed or appear to be attempting to elude the officers, did

not try to flee after pulling over, and did not resist when asked to exit his vehicle.

(*Id*. at 14, 18, ECF No. 25-2 at Pg ID 223, 228.)

As Officer Moreno was handcuffing Mr. Clark-Reed, Mr. Clark-Reed asked

the officers to "do [him] a favor" and get his inhaler because he thought he was

having an asthma attack.  The video reflects that Officer Moreno and Officer

7

Carthan helped Mr. Clark-Reed to his feet and then Mr. Clark-Reed walked with the officers back toward the passenger side of the patrol car. According to Officer Moreno, Mr. Clark-Reed was on the ground for less than five to eight seconds. (*Id.* Ex. 3 at 34, ECF No. 25-4 at Pg ID 313.) Officer Carthan recalled the length of time as being less than a minute. (*Id.*, Ex. 2 at 2, ECF No. 25-3 at Pg ID 235.) As they stood on the side of the officers' car, Mr. Clark-Reed began to have labored breathing and again asked for his inhaler.

Officer Carver retrieved a small gray asthma inhaler from the Charger and handed or tossed it to Officer Moreno. Officer Moreno then showed the inhaler to Mr. Clark-Reed and asked if it was his to which Mr. Clark-Reed nodded "yes". Officer Morena then asked Mr. Clark-Reed if he wanted it, to which Mr. Clark-Reed again nodded "yes." Officer Moreno then held up the inhaler so Mr. Clark-Reed could place his mouth around it and activated it. After Mr. Clark-Reed took one or two puffs from the inhaler, he stated: "I'm gonna piss on myself" and then said "ambulance."

In response, Officer Carver got on the radio and requested an ambulance for a man having an asthma attack. Seconds later, Mr. Clark-Reed began to lose his balance and leaned against the scout car. Moments later, he fell back on the hood and began sliding off. Officers Moreno and Carthan tried, but were unable, to hold Mr. Clark-Reed up and he slumped to the ground. At this point, Officer Moreno

8

removed Mr. Clark-Reed's handcuffs and the officers rolled him onto his left side with his arms out-stretched in a "rescue breathing recovery position." (*See* Pl.'s Resp. Ex. 3 at 42, ECF No. 25-4 at Pg ID 321.)

Mr. Clark-Reed's breathing was labored and then began to slow significantly. He then began to gurgle and foam at the mouth. After about thirty seconds, it appeared to the officers that Mr. Clark-Reed had stopped breathing and they checked and found no pulse. Officer Carver advised dispatch of Mr. Clark-Reed's condition and asked for an estimated arrival time for the ambulance. The officers then began performing CPR, continuing until the ambulance arrived, and transported Mr. Clark-Reed to a hospital where he was pronounced dead.

Plaintiff's expert, Werner U. Spitz, M.D., FCAP, opined that Mr. Clark-Reed "died as a result of asphyxiation due to his inability to breathe brought on by asthma, triggered by stress, agitation and fear during his arrest." (Pl.'s Resp. Ex. 6 at 3, ECF No. 25-7 at Pg ID 343.) Dr. Spitz provides that Mr. Clark-Reed's use of the inhaler did not relieve his asthma attack because it was not properly administered by the officers. (*Id*. at 2, Pg ID 342.) According to Dr. Spitz, "[b]ut for the ineffective use of [the] inhaler, [Mr.] Clark-Reed would not have died." (*Id*. at 3, Pg Id 343.)

## III.    Applicable Law and Analysis

### A.    Plaintiff's § 1983 Claims Against the Officers

Section 1983 creates a private right of action against a state official who deprives an individual of his or her constitutional rights under color of state law. 42 U.S.C. § 1983. Civil liability does not attach, however, simply because a court determines that an official's actions were unconstitutional. Qualified immunity shields federal and state officials from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)) (additional quotation marks and citation omitted).

"The qualified immunity analysis is a two-step inquiry: (1) whether a constitutional right has been violated; and (2) whether that right was clearly established, though the steps need not be taken in that order." *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016) (citing *Person v. Callahan*, 555 U.S. 223, 232 (2009)). The plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Chappell*, 585 F.3d at 907 (citing *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2006)).

To be "clearly established," existing law must "place[] the constitutionality of the officer's conduct 'beyond debate.'" *District of Columbia v. Wesby*, -- U.S. --, 138 S. Ct 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)). In *Wesby*, the Supreme Court summarized its previous explanations of what "clearly established" means:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know.

138 S. Ct. at 589-90 (internal quotation marks and citations omitted). Existing precedent must "clearly prohibit the officer's conduct in the particular circumstances before him." *Id*. at 590. In other words, the plaintiff must show that the right was clearly established in a "particularized sense." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

"This requires a high 'degree of specificity.'" *Wesby*, 138 S. Ct. at 590 (quoting *Mullenix v. Luna*, 577 U.S. --, 136 S. Ct. 305, 309 (2015) (per curiam)). "[C]ourts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Id*. (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). Nevertheless, the Sixth Circuit has warned that

defining the right too narrowly would "defeat[] the purpose of § 1983[.]" *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 508 (6th Cir. 2012). "'The mere fact that a court has not held the particular action in question unlawful is insufficient to create immunity.'" *Martin v. City of Broadview Heights*, 712 F.3d 951, 961 (6th Cir. 2013) (quoting *Griffith v. Coburn*, 473 F.3d 650, 659 (6th Cir. 2007) "An action's unlawfulness may be plain 'from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs.'" *Id*. (quoting *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004)).

Plaintiff asserts that the officers lacked probable cause for their search, seizure and arrest of Mr. Clark-Reed and that they used excessive force against him. In her Complaint, Plaintiff invokes the Fourth and Fourteenth Amendments as the sources of the constitutional rights infringed by the officers. However, as Defendants assert in their motion and Plaintiff does not dispute in response, the Fourth Amendment is the proper mechanism to redress the alleged violations. *See Albright v. Oliver*, 510 U.S. 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and an ordinary traffic stop is a "seizure" within the meaning of the Fourth Amendment. *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012); *see also Delaware v. Prouse*, 440 U.S. 648, 653 (1979). "[A] police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *Jackson*, 682 F.3d at 453 (citing *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008)) (additional citations omitted). "Probable cause is defined as 'reasonable grounds for belief [that an infraction occurred], supported by less than prima facie proof but more than mere suspicion.'" *United States v.* Ferguson, 8 F.3d 385, 392 (6th Cir. 1993) (citing *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

Whether a particular traffic stop is constitutional is analyzed under "the standard for temporary detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny." *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010). Under this framework, the stop must be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Winters*, 782 F.3d 289, 296 (6th Cir. 2016) (citing *Terry*, 392 U.S. at 20). "If an officer develops reasonable and articulable suspicion of criminal activity during a stop, 'he may extend the traffic stop long enough to confirm or dispel his suspicions. Any such extension, though, must be limited in scope and

duration.'" *Id.* (quoting *United States v. Johnson*, 482 F. App'x 137, 143 (6th Cir. 2011) (additional quotation marks and citation omitted)).

The officers stopped the Charger Mr. Clark-Reed was driving on March 31, 2015, because of illegally tinted windows in violation of Michigan Compiled Laws Section 257.709. Section 257.709 provides in relevant part:

> (1) A person shall not operate a motor vehicle with any of the following:
>
> (a) A sign, poster, nontransparent material, window application, reflective film, or nonreflective film upon or in the front windshield, the side windows immediately adjacent to the driver or front passenger, or the sidewings adjacent to and forward of the driver or front passenger, except that a tinted film may be used along the top edge of the windshield and the side windows or sidewings immediately adjacent to the driver or front passenger if the material does not extend more than 4 inches from the top of the windshield, or lower than the shade band, whichever is closer to the top of the windshield.
>
> (b) A rear window or side window to the rear of the driver composed of, covered by, or treated with a material that creates a total solar reflectance of 35% or more in the visible light range, including a silver or gold reflective film.
>
> (c) An object that obstructs the vision of the driver of the vehicle, except as authorized by law.

Mich. Comp. Laws § 257.709(1). Plaintiff raises several arguments to undermine the officers' reports and testimony that they reasonably believed the Charger was not in compliance with the statute, focusing mainly on whether the windows were tinted beyond thirty-five percent. The officers, however, stopped the Charger

14

because they claimed the *front* driver and passenger-side windows were tinted. The degree of tinting therefore is not relevant. *See* Mich. Comp. Laws § 257.709(1)(a) (prohibiting *any* tinting of front passenger and driver windows extending more than four inches from the top of the windshield or shade band by a material, application, or film).

Plaintiff also argues that officers use the statute to engage in fishing expeditions for more serious crimes. She cites to Officer Moreno's admission that he can use traffic offenses to accomplish his primary function to do weapon, narcotic, and wanted person investigations. (*See* Pl.'s Resp. Ex. 3 at 7, ECF No. 25-4 at Pg ID 286.) Case law instructs, however, that even if the evidence suggests that the officers' stated reason for stopping the Charger was pretextual, this does not render the stop unconstitutional. "When a traffic stop is supported by probable cause, an officer's subjective intent is irrelevant." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). Police officers may stop vehicles for any civil infraction, no matter how slight, even if the officer's true purpose was a hope that contraband would be found as a result of the stop. *Id.* (citing *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995)).

Plaintiff further argues, however, that the time of the stop (9:30 p.m.) "sheds some doubt on the defendants' ability to see whether the windows were tinted

illegally." (Pl.'s Resp. Br. at 22, ECF No. 25 at Pg ID 193.) While the investigative report attached to Plaintiff's response brief indicates, "there was ample artificial lighting from the street lights and surrounding businesses[]" and "[t]he weather was clear" (Pl.'s Resp. Ex. 5, ECF No. 25-6), it is not evident from the record whether this artificial lighting also was in the area where Officer Moreno claims he viewed the Charger's windows and initiated the stop. The Court therefore believes a reasonable jury could conclude, given the conditions, that the officers lacked the ability to observe whether the windows were in fact tinted illegally. *See Climer v. Dillenbeck*, No. 08-11074 (E.D. Mich. Feb. 3, 2009).

Even if the officers had probable cause to stop the Charger, their subsequent conduct could be found unlawful because "'[a] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution.'" *United States v. Walton*, 258 F. App'x 753, 757 (6th Cir. 2007) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). The officers' subsequent actions had to be reasonable. *Graham*, 490 U.S. at 395. Making this determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396; *Champion*, 380 F.3d at 901 (quoting *Graham*).

The Court pauses here to discuss Officers Carver and Carthan. In their motion, Defendants argue that Officers Carthan and Carver are entitled to summary judgment because "Plaintiff has alleged no facts that would establish an excessive use of force [claim] against [them]." (Defs.' Br. in Supp. of Mot. at 16, ECF No. 20 at Pg ID 124). In response, Plaintiff does not identify any facts to show that these officers were personally involved in the excessive force allegedly used against Mr. Clark-Reed, much less identify materials in the record to create an issue of fact on this issue.

The record evidence reflects that only Officer Moreno instructed Mr. Clark-Reed to exit the vehicle and lie on the ground and that only Officer Moreno, with Officer Carthan's assistance, handcuffed Mr. Clark-Reed. The undisputed evidence (including the video) shows that Officer Carver was on the other side of the Charger from Mr. Clark-Reed and that he did not use any force against Mr. Clark-Reed.

The Court sees no facts on which a reasonable jury could rely to find Officer Carver liable on Plaintiff's excessive force claim. There are facts which could lead a reasonable juror to a different conclusion with respect to Officer Carthan, however. As indicated, Officer Carthan, by his own admission, assisted in handcuffing Mr. Clark-Reed. Further, Officer Carthan was adjacent to Officer Moreno when Mr. Clark-Reed was removed from the Charger and placed on the

ground.  As such, the Court finds an issue of fact as to whether Officer Carthan is directly liable, or liable under a failure to intervene theory, for any violation of Mr. Clark-Reed's right to be free from the use of excessive force.

A reasonable juror could conclude that Officer Moreno's and/or Officer Carthan's conduct was unreasonable under the circumstances presented.  First, the traffic infraction at issue was not severe.  Second, there is no evidence that Mr. Clark-Reed attempted to evade or flee the officers or that he resisted arrest.  A reasonable jury might find that he quickly pulled over after Officer Moreno activated the patrol car's lights and siren.  Mr. Clark-Reed's movements inside the Charger before being stopped also could be interpreted differently based on how they were described by the officers.  Further, there is a dispute as to whether Mr. Clark-Reed in fact had to be told more than once to keep his hands on his head before being removed from the vehicle.  Mr. Clark-Reed otherwise complied with Officer Moreno's commands.  But even if the officers had concern for their safety, this concern could have been alleviated by a quick pat down after Mr. Clark-Reed was removed from the car, rather than ordering him to the ground and then handcuffing him.

"'A concern for officer safety permits a variety of police responses in differing circumstances, including ordering a driver and passenger out of a car during a traffic stop, … and conducting pat-down searches upon reasonable

suspicion that they may be *armed and dangerous*.'" *United States v. Campbell*, 549 F.3d 364, 372 (6th Cir. 2008) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 822 (6th Cir. 2005)); *see also Pennsylvania v. Mimms*¸434 U.S. 106 (1977). But the Court finds a genuine issue of material fact as to whether the officers reasonably believed—if they in fact did—that Mr. Clark-Reed posed a threat. And even if they did, a jury could conclude that ordering Mr. Clark-Reed to lie face down on the ground and handcuffing him was not reasonably necessary to alleviate that threat.

Having found a genuine issue of material fact as to whether these actions were reasonable, the Court turns to whether Plaintiff has shown that the officers violated a clearly established constitutional right. The Court finds that "the right to be free from physical force when one is not resisting the police is a clearly established right." *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008); *see also Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006) (unreasonable to tackle a cuffed and compliant suspect). Further, Supreme Court precedent clearly established the right to be free of an unreasonable investigatory stop and stop-and-frisk. *See Arizona v. Johnson*, 555 U.S. 323, 327 (2009). The Court therefore concludes that Officers Moreno and Carthan are not entitled to summary judgment with respect to Plaintiff's claim that they used excessive force against Mr. Clark-Reed.

Plaintiff also asserts that the officers were "deliberately indifferent" and this claim appears to be based on the officers' response to Mr. Clark-Reed's asthma attack, specifically their failure to allow Mr. Clark-Reed to administer the inhaler himself and her assertion that they administered the inhaler improperly. According to Plaintiff, "[t]here is no evidence that the Defendant Officers appropriately primed the inhaler prior to administering it to Mr. Clark-Reed" or "checked the inhaler passage for blockage prior to administering it to Mr. Clark-Reed" and "Mr. Clark-Reed was only allowed one puff from the inhaler, which is contrary to most prescriptions[.]" (Pl.'s Resp. Br. at 12-13, Pg ID 25 at Pg ID 184.) Plaintiff also asserts that "it is essential that the person utilizing the inhaler be able to take calm deep breaths" and that the officers deprived Mr. Clark-Reed of the ability to do so "by requiring him to remain handcuffed while utilizing the inhaler." (*Id.*) Plaintiff fails to show, however, that the officers' actions—even if negligent—were unconstitutional.[3]

In conclusion, the Court holds that Officers Moreno, Carthan, and Carver are not entitled to summary judgment with respect to Plaintiff's § 1983 claim alleging unlawful seizure. Officer Carver is entitled to summary judgment with respect to Plaintiff's § 1983 claim to the extent based on conduct after the stop. The Court

---

[3] This conclusion in no way addresses whether Mr. Clark-Reed's asthma attack was triggered by any force used against him.

reaches a contrary conclusion with respect to Officers Moreno and Carthan, however.

### B. Plaintiff's § 1983 Claim against the City of Detroit

Plaintiff alleges that the City of Detroit is liable for its officers' violations of Mr. Clark-Reed's constitutional rights under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).  Defendants argue that Plaintiff lacks evidence to support such a claim.  In response, Plaintiff contends that the city is liable because it acquiesced in and ratified the officers' unconstitutional acts after investigating the incident.  (Pl.'s Resp. Br. at 33, ECF No. 25 at Pg ID 204.)  Plaintiff also states that "[a] municipality may be liable under § 1983 if 'a municipal policy or policy of inaction was the moving force behind the violation'" and that "[a] municipal custom may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice."  (*Id*. (citations and emphasis omitted).)

Plaintiff's response, however states only legal conclusions.  Plaintiff has not identified facts she believes support a finding that the City of Detroit acquiesced in or ratified the officers' actions.  She also does not identify any specific custom or policy that was a moving force behind the alleged violations of Mr. Clark-Reed's constitutional rights.  The Court therefore is granting summary judgment to the City of Detroit on Plaintiff's § 1983 claim.

## C.    Plaintiff's Claims under the Michigan Constitution

Defendants argue that Plaintiff's claim alleging violations of Mr. Clark-Reed's rights under the Michigan Constitution are precluded by the Michigan Supreme Court's decision in *Jones v. Powell*, 612 N.W.2d 423, 427 (Mich. 2000). In that case, the Court held that there is no state law claim for damages against individuals or municipalities based on alleged violations of Michigan's constitution.  *Id.*  In response, Plaintiff cites an earlier Michigan Supreme Court decision, *Smith v. Department of Public Health*, 410 N.W.2d 748 (1987), to show that her claim under the Michigan Constitution is not barred.

In *Jones v. Powell*, however, the Michigan Supreme Court expressly addressed its prior decision in *Smith.*  612 N.W.2d at 335-36.  The *Jones* Court provided:

> We agree with the Court of Appeals majority that our decision in *Smith* provides no support for inferring a damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual government employee. In *Smith*, our consideration of the issue focused on whether such a remedy should be inferred against the state, which is not subject to liability under 42 U.S.C. § 1983.
>
> * * *
>
> *Smith* only recognized a narrow remedy against the state on the basis of the unavailability of any other remedy. Those concerns are inapplicable in actions against a municipality or an individual defendant. Unlike states and state officials sued in an official capacity, municipalities are not protected by the Eleventh Amendment. … A plaintiff may sue a municipality in federal or state court under 42

U.S.C. § 1983 to redress a violation of a federal constitutional right.
… Further, a plaintiff may bring an action against an individual
defendant under § 1983 and common-law tort theories.

*Id*. at 335-37 (internal citations omitted). Plaintiff is suing individuals and a

municipality for which § 1983 provides redress for any violation of Mr. Clark-

Reed's constitutional rights. Pursuant to *Jones v. Powell*, her claim under the

Michigan Constitution must be dismissed.

## IV.    Conclusion

Mr. Clark-Reed's death during the traffic stop on March 31, 2015 was tragic.

Viewing the facts in a light most favorable to Plaintiff, the Court finds a question

of fact with respect to whether the stop was lawful. The Court further believes that

a reasonable jury could find that Officers Moreno and Carthan acted unreasonably

(excessive force) and in violation of clearly established law during the stop.

Plaintiff, however, has not shown that Officer Carver personally used force against

Mr. Clark-Reed.

Plaintiff does not allege facts to support a *Monell* claim against the City of

Detroit. Finally, the Michigan Supreme Court has held that there is no damages

remedy against an individual or municipality under the Michigan Constitution

because other remedies are available against them, specifically a § 1983 claim. As

such, Plaintiff's claim under the Michigan Constitution also must be dismissed.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (ECF No. 20) is **GRANTED IN PART AND DENIED IN PART** in that summary judgment is **GRANTED** with respect to the following: (1) Plaintiff's excessive force claim against Officer Carver; (2) her claim against the City of Detroit; and (3) her claim under the Michigan Constitution. Those claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the City of Detroit is **DISMISSED AS PARTY** to this action.

s/ Linda V. Parker            
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 20, 2019